**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

John Bradley Clark,

Plaintiff,

v. 6:26-CV-01372 (GTS/MJK)

Brittany Clifford, *et al.*

Defendants.

---

John Bradley Clark, Plaintiff *pro se*

Mitchell J. Katz, U.S. Magistrate Judge

To the Honorable Glenn T. Suddaby, U.S. District Judge:

**ORDER and REPORT-RECOMMENDATION**

Clark commenced this action on July 31, 2026, by filing a Complaint. (Dkt. 1). Clark also filed an application to proceed *in forma pauperis*. ("*IFP* Application"). On July 17, 2026, U.S. District Judge Glenn T. Suddaby issued an Order administratively closing this action because Clark's *IFP* Application was incomplete. (Dkt. 5). Clark was given 30 days from the date of Judge Suddaby's Order to either pay the $405.00 filing fee or submit a completed and signed *IFP* Application. (Dkt. 5, page 3). On August 24, 2026, Clark filed another motion for

leave to proceed *in forma pauperis*. (Dkt. 10). The Clerk has sent the Complaint and *IFP* Application (Dkts. 1, 10) to the Court for review.

## I. *IFP* APPLICATION

Clark declares in his *IFP* application that he is unable to pay the filing fee. (Dkt. 10). After reviewing Clark's *IFP* application, this Court finds that he is eligible for *IFP* status.

## II. BACKGROUND

The Court assumes familiarity with the facts of this case which the Court will incorporate in its analysis where necessary.

## III. STANDARD OF REVIEW

Courts must consider the sufficiency of the allegations set forth in the Complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A. Section 1915(e)(2) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *IFP*, "the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)-(b). The term "prisoner" includes pretrial detainees. 28 U.S.C. § 1915A(c).

Second Circuit jurisprudence suggests that 28 U.S.C. § 1915(e)(2)(B)'s review of *pro se* complaints is a two-step inquiry.

At step one, courts apply the traditional special solicitude afforded to *pro se* plaintiffs. *See, e.g.*, *Rosa v. Doe*, 86 F.4th 1001, 1007 (2d Cir. 2023). Indeed, courts are "obligated to afford a special solicitude to *pro se* litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). "The solicitude afforded to *pro se* litigants takes a variety of forms. It most often consists of liberal construction of pleadings" and "motion papers." *Id.* (cleaned up). So, at step one, courts must "accept all of the facts alleged in the complaint as true and draw all inferences in the

plaintiff's favor." *White v. Schmidt*, No. 22-1267, 2024 WL 1266245, at *2 (2d Cir. 2024) (summary order) (quoting *Harnage v. Lightner*, 916 F.3d 138, 140-41 (2d Cir. 2019)). And once the court has done so, it must then construe the *pro se* submission "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*per curiam*) (cleaned up).

At step two, courts subject the liberally construed pleading to Rule 8's pleading standard. *See, e.g.*, *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (*per curiam*) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2005) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) when affirming a district court's dismissal of the plaintiff's complaint under 28 U.S.C. § 1915); *see also Edwards v. Erfe*, 588 F. App'x 79, 80 (2d Cir. 2015) (summary order) (citing *Sykes* and affirming the District Court's *sua sponte* dismissal of a prisoner rights case); *Hirsch v. Rochester City Police Dep't*, 578 F. App'x 49, 50 (2d Cir. 2014) (summary order) (same in a civil rights case); *Sheehy v. Brown*, 335 F. App'x 102, 103-04 (2d Cir. 2009) (summary order) (citing *Iqbal* and affirming the District Court's dismissal of a claim under 20 U.S.C. § 1915(e)(2)).

While the Second Circuit has never formally stated that Rule 8's pleading standard applies, the Court infers that the Second Circuit has adopted that position. To arrive at this conclusion, the Court focuses on two pieces of evidence. First, the Circuit has cited *Iqbal* and *Twombly*—which clarified Rule 8s pleading standard. *See Sykes*, 723 F.3d at 403. Second, the other circuit courts have authorized district courts to apply the Rule 12(b)(6) standard when reviewing claims under § 1915(e)(2)(B). *See Herrera v. Agents of Pennsylvania Bd. of Prob. & Parole*, 132 F.4th 248, 254 n.5 (3d Cir. 2025) (applying Rule 12(b)(6)'s standard to § 1915(e)(2)(B) review); *Martin v. Duffy*, 858 F.3d 239, 248 (4th Cir. 2017) (same); *Hale v. King*, 642 F.3d 492, 497 (5th Cir. 2011) (*per curiam*) (same); *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (same); *Coleman v. Lab. & Indus. Rev. Comm'n of Wisconsin*, 860 F.3d 461, 468 (7th Cir. 2017) (same); *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (same); *Kay v. Bemis*, 500 F.3d 1214, 1217-18 (10th Cir. 2007) (same); *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008) (same). Nothing in the Second Circuit's jurisprudence leads this Court to believe that it would break stride with eight other circuit courts. This evidence, altogether, leads this Court to believe that the Second Circuit

approves of this Court's application of Rule 12(b)(6)'s standard to § 1915(e)(2)(B) reviews *after* applying special solicitude to the *pro se* submission.

When applying Rule 8 to pleadings, the Court must determine if a claim is facially plausible. *See Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This means that *pro se* complaints, even while liberally construed, "must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Sykes*, 723 F.3d at 403 (quoting *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

In sum, the Court's role, when reviewing a Complaint under § 1915(e)(2)(B), is two-fold. First, the Court must draw all inferences in the *pro se* plaintiff's favor and construe their submission to raise the strongest possible argument. Second, the Court must then review the

Complaint and determine if it plausibly alleges enough facts for the Court to reasonably infer that the defendant would be liable for the alleged misconduct.

## IV. DISCUSSION

The Court recommends:

1. Dismissal of Clark's first claim for excessive force *without prejudice and with leave to amend* to allow Clark the opportunity to plead additional facts, if possible, as to why the statute of limitations should be tolled. Alternatively, if the District Court determines that Clark's first claim is not time barred, dismissal *without prejudice and with leave to amend* is recommended for failure to comply with Fed. R. Civ. P. 8;

2. Dismissal of Clark's second claim for "failure to protect [his] medical needs and mental health" *without prejudice and with leave to amend* to allow Clark the opportunity to plead additional facts, if possible, as to why the statute of limitations should be tolled. Alternatively, if the District Court determines that Clark's second claim is not time barred, dismissal *without prejudice and with leave to amend* is recommended for failure to comply with Fed. R. Civ. P. 8;

3. Dismissal of Clark's third claim against Defendant Madison *without prejudice and with leave to amend* because he is not a state actor;

4. Dismissal of Clark's third claim against Defendant Muehl *with prejudice and without leave to amend* because he is immune from suit;

5. Dismissal of Clark's claim against Defendant Clifford *without prejudice and without leave to amend* because she is not a state actor; and

6. Dismissal of Clark's claim against Defendant Doe *without prejudice and with leave to amend* for failure to comply with Fed. R. Civ. P. 8.

## A. Clark's claim for excessive force is time barred and violates Fed. R. Civ. P. 8.

The Court recommends dismissal of Clark's first claim for excessive force because it is time barred.

Claims brought under Section 1983 generally must be filed within three years of the date a claim accrues.[1] Section 1983 claims generally accrue when a plaintiff knows or has reason to know of the injury that is the basis of the claim. *See Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013).

Here, the events giving rise to Clark's claim for excessive force accrued on July 10, 2021, more than five years before this action was commenced by filing the Complaint. (Dkt. 1, pg. 4).

[1] The statute of limitations for Section 1983 claims is found in the "general or residual [state] statute [of limitations] for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). In New York, that period is three years. *See* N.Y. C.P.L.R. § 214(5).

Therefore, in the absence of some basis for tolling or disregarding the limitations period, which the Court will allow Clark to address because of his *pro se* status,[2] his § 1983 claim for excessive force is subject to dismissal as untimely asserted. *See Abbas v. Dixon*, 480 F.3d 636, 640-41 (2d Cir. 2007) (explaining that a district court should not dismiss a complaint as time-barred without providing a *pro se* plaintiff with notice and an opportunity to be heard as to whether there might be a meritorious tolling argument or other reason why the complaint might be considered timely).

The Court also recommends dismissal of Clark's claim for excessive force because it violates Fed. R. Civ. P. 8. Pleadings must

---

[2] Equitable tolling is available in "rare and exceptional" cases where "extraordinary circumstances prevented a party from timely performing a required act," and "the party acted with reasonable diligence throughout the period" to be tolled. *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005). As the Second Circuit recognized in *Abbas*, New York law recognizes the equitable tolling doctrine where a plaintiff demonstrates that he was induced by fraud, misrepresentations, or deception to refrain from timely commencing an action, and that he acted with due diligence throughout the period to be tolled. *See Abbas*, 480 F.3d at 642; *see also Gonzalez v. Hasty*, 651 F.3d 318, 322 (2d Cir. 2011) ("Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances.").

"[T]he continuing violation doctrine can be applied when the plaintiff's claim seeks redress for injuries resulting from 'a series of separate acts that collectively constitute one unlawful [act],' but the doctrine cannot be applied when the plaintiff challenges conduct that is a discrete unlawful act." *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002)).

contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief ..." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted" so adverse parties have "the opportunity to file a responsive answer, prepare an adequate defense, and determine whether the doctrine of res judicata is applicable." *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (cleaned up). Fed. R. Civ. P. 8 also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought[.]" Fed. R. Civ. P. 8(a)(1), (3). "Although 'no technical form is required,' the Federal Rules make clear that each allegation contained in the pleading 'must be simple, concise, and direct.'" *Cole v. Smrtic*, No. 24-CV-847, 2024 WL 4870495, at *2 (N.D.N.Y. Nov. 21, 2024) (quoting Fed. R. Civ. P. 8(d)). Allegations "so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Clark's claim provides no details about the nature and extent of the force that was purportedly used against him. Beyond that, there are no allegations about what, if any, injuries Clark allegedly sustained

from the force that was used against him and who caused them. Clark's claim is nothing more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*.

For these reasons, the Court recommends dismissal of Clark's claim for excessive force *without prejudice and with leave to amend.*

**B. Clark's claim for failure to protect his medical needs is time barred and violates Fed. R. Civ. P. 8.**

Clark claims he was a pre-trial detainee at the time of the allegations set forth in the Complaint. (Dkt. 1, pg. 2). As such, the Court construes his claim of "failure to protect [his] medical needs and mental health" as one for indifference to medical needs arising under the Due Process Clause of the Fourteenth Amendment. *See Iacovangelo v. Corr. Med. Care, Inc.*, 624 Fed. App'x 10 (2d Cir. 2015) ("A claim for indifference to the medical needs of a pre-trial detainee in state custody is properly analyzed under the Due Process Clause of the Fourteenth Amendment").

Because Clark's claim for indifference to medical needs accrued on September 10, 2021, it is time barred for the same reason discussed

regarding his claim for excessive force, unless Clark can articulate a reason why the statute of limitations should be tolled. The Court therefore recommends dismissal *without prejudice and with leave to amend* so that Clark can set forth a factual basis why the statute of limitations should be tolled.

Clark's failure to comply with Fed. R. Civ. P. 8, as discussed above, also warrants dismissal of the Complaint *without prejudice and with leave to amend*. The Complaint lacks facts supporting Clark's Fourteenth Amendment Claim for indifference to medical needs. Clark does not describe how his medical needs were not met and which defendants, if any, did not address them.

For these reasons, the Court recommends dismissal of Clark's claim for indifference to medical needs *without prejudice and with leave to amend.*

### C. Clark's claim against Defendant Madison should be dismissed.

Clark names Paul Madison-Public Defender as a defendant in this action. (Dkt. 1, pg. 1). The Complaint alleges that Defendant Madison "denied [Clark] [his] due process in a disciplinary or other proceeding,

denying equal protection knowing [his] mental status at the time and did [not] allow [him] [to] exercise [his] rights." (Dkt. 1, pg. 5).

"Public defenders, including Legal Aid attorneys, court-appointed counsel[,] and private attorneys[,] do not act under the color of state law merely by virtue of their position." *Harrison v. New York*, 95 F. Supp. 3d 293, 328 (E.D.N.Y. 2015) (citation and internal quotation marks omitted). They can be considered state actors in "limited circumstances[,]" such as by "making hiring and firing decisions on behalf of the State[,] . . . performing certain administrative and possibly investigative functions[, or] for malpractice . . . under state tort law." *Fox v. Zennamo*, No. 6:15-CV-587, 2016 WL 1090583, *2 (N.D.N.Y. Mar. 18, 2016) (second and third alterations in original) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 325, (1981)). A public defender or appointed attorney also "could be held liable under § 1983 if they conspired with state actors." *Khalil v. Gen. Elec. Corp.*, No. 5:22-CV-312, 2023 WL 11921904, *12 (N.D.N.Y. Dec. 1, 2023), report and *recommendation adopted*, 2024 WL 3963699 (N.D.N.Y. Aug. 28, 2024).

Here, the allegations in the Complaint do not support an inference that Defendant Madison engaged in conduct that would implicate any of

the limited circumstances where appointed counsel can be considered a state actor. Clark has not alleged facts plausibly suggesting that Defendant Madison was involved in a "conspiracy to inflict an unconstitutional injury." *Id.* Also, it is well settled that "42 U.S.C. § 1983 is not the appropriate vehicle to bring a claim for ineffective assistance of counsel." *Lawrence v. Shattick*, No. 8:24-CV-656, 2025 WL 542587, *4 n. 5 (N.D.N.Y. Feb. 19, 2025) (citation omitted). However, in recognition of the special solicitude afforded to *pro se* litigants, the Court recommends dismissal *without prejudice and with leave to amend*.

**D. Clark's claim against Defendant Muehl should be dismissed.**

The Court recommends dismissal of the Complaint against Otsego District Attorney John Muehl *with prejudice and without leave to amend* because he enjoys prosecutorial immunity.

"Prosecutors sued under § 1983 enjoy absolute immunity from claims for damages arising out of prosecutorial duties that are intimately associated with the judicial phase of the criminal process." *Joyner v. Cty. of Cayuga*, No. 5:20-CV-1904088 (MAD/TWD), 2020 WL 1904088, at *9 (N.D.N.Y. Apr. 17, 2020) (cleaned up). Prosecutorial

immunity from § 1983 liability covers "virtually all acts, regardless of motivation, associated with the prosecutor's function as an advocate." *Anilao v. Spota,* 27 F.4th 855, 864 (2d Cir. 2022) (cleaned up). Naturally, this includes charging defendants, presenting evidence to a grand jury, and evaluating evidence before trial. *Buari v. City of New York,* 530 F. Supp. 3d 356, 378 (S.D.N.Y. 2021). Immunity even extends to falsifying evidence, coercing witnesses, the knowing use of perjured testimony, deliberating withholding exculpatory information, making false or defamatory statements in judicial proceedings, and conspiring to present false evidence at a criminal trial. *Id.* (collecting cases).

Here, Clark alleges that Defendant Muehl "denied [Clark] [his] due process in a disciplinary or other proceeding, denying equal protection knowing [his] mental status at the time and did [not] allow [him] [to] exercise [his] rights." (Dkt. 1, pg. 5). Liberally construed, Clark is challenging the way his criminal proceedings were handled. However, these allegations are not enough to overcome prosecutorial immunity. *See Buari*, 530 F. Supp. 3d at 378. As a result, the Court recommends dismissing Clark's claim against Defendant Muehl *with prejudice and without leave to amend.*

### E. Clark's claim against Defendant Clifford should be dismissed.

The Complaint describes Defendant Clifford as a woman Clark knows who accuses him of committing a crime, not as a government actor. (Dkt. 1, pg. 4). The Court therefore recommends dismissal of the Complaint against Defendant Clifford *without prejudice and without leave to amend* because Clark does not allege that Clifford is a state actor or acting under color of state law. *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015) (only "state actors" can be sued under § 1983).

### F. The Complaint should be dismissed against Defendant Doe.

The Court recommends dismissal of the Complaint against Defendant Doe *without prejudice and with leave to amend* because it violates Fed. R. Civ. P. 8.

The Complaint describes Defendant Doe as an "Arresting Officer." (Dkt. 1, pg. 1). However, as drafted, the Complaint does not associate Defendant Doe with the allegations in either the first or second claims more fully discussed above. As such, the Court cannot discern whether the allegations in those claims are attributable to him. If they are, the Complaint should be dismissed against Defendant Doe because Clark's

first and second claims are time barred as more fully discussed above unless the time within which to bring those claims should be tolled.

Given the lack of clarity in the Complaint, it is possible that Defendant Doe is not associated with either the first or second claims, in which case Clark has failed to give Defendant Doe notice of the claims against them under Fed, R. Civ. 8.

For these reasons the Court recommends dismissal of the Complaint against Defendant Doe *without prejudice and with leave to amend*.

## V. OPPORTUNITY TO AMEND

Generally, before the court dismisses a *pro se* complaint or any part of the complaint *sua sponte*, the court should afford a plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Here, the Court recommends that Clark be afforded an opportunity to file an amended pleading, except for his claims against: (a) Defendant Muehl which the Court recommends be dismissed *with prejudice and without leave to amend* because he is immune from suit; and (b) Defendant Clifford which the Court recommends be dismissed *without prejudice and without leave to amend* because she is not a state actor.

If the District Court permits Clark to file an amended pleading, he is reminded of his obligations under Fed. R. Civ. P. 8 that the amended complaint contain a short and plain statement showing that he is entitled to relief. Clark is also reminded of his obligations under Fed. R. Civ. P. 10 to specifically identify all potential defendants in the caption of the action. While the amended pleading should contain sufficient facts to provide Defendants with notice of the claims against them, it should not contain material that is irrelevant to his claims. Finally, Clark is reminded to plead additional facts, if any, as to why the statute of limitations should be tolled.

## VI. CONCLUSION

**WHEREFORE**, based on the findings above, it is hereby

**ORDERED**, that Clark's motion to proceed *in forma pauperis* (Dkt. 10) is **GRANTED**, and it is further

**RECOMMENDED** that the District Court:

1. Dismiss Clark's first claim for excessive force *without prejudice and with leave to amend* to allow Clark the opportunity to plead additional facts, if possible, as to why the statute of limitations should be tolled. Alternatively, if the District Court determines that Clark's first claim is not time barred, dismissal *without prejudice and with leave to amend* is recommended for failure to comply with Fed. R. Civ. P. 8;

2. Dismiss Clark's second claim for "failure to protect [his] medical need and mental health" *without prejudice and with leave to amend* to allow Clark the opportunity to plead additional facts, if possible, as to why the statute of limitations should be tolled. Alternatively, if the District Court determines that Clark's second claim is not time barred, dismissal *without prejudice and with leave to amend* is recommended for failure to comply with Fed. R. Civ. P. 8;

3. Dismiss Clark's third claim against Defendant Madison *without prejudice and with leave to amend*;

4. Dismiss Clark's third claim against Defendant Muehl *with prejudice and without leave to amend* because he is immune from suit;

5. Dismiss Clark's claim against Defendant Clifford *without prejudice and without leave to amend* because she is not a state actor; and

6. Dismiss Clark's claim against Defendant Doe *without prejudice and with leave to amend* for failure to comply with Fed. R. Civ. P. 8.

**ORDERED** that the Clerk provide Clark with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (*per curiam*).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[1] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: November 3, 2026.

Mitchell J Katz
Digitally signed by Mitchell J Katz
Date: 2026.11.03 09:16:47 -05'00'

Hon. Mitchell J. Katz
U.S. Magistrate Judge

2024 WL 1266245
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Paul WHITE, Plaintiff-Appellant,
v.
Sandra SCHMIDT, aka Sandra Kroger Schmidt, aka Sandra K. Schmidt, Defendant-Appellee,
Pat Doe, (1–10), Defendants.
Paul White, Plaintiff-Appellant,
v.
Teodocia Santos, Ella Abney, Personally and as Executrix of the Estate of Albert Abney, Pat Doe, Defendants-Appellees.*

* The Clerk of Court is directed to consolidate these appeals for purposes of decision.

22-1267, 22-1911
|
March 26, 2024

Appeals from judgments of the United States District Court for the Northern District of New York (Mae A. D'Agostino, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED IN PART** and **VACATED IN PART** and **REMANDED**.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: Paul White, pro se, Coxsackie, NY.

FOR DEFENDANTS-APPELLEES: No appearance.

PRESENT: ROBERT D. SACK, WILLIAM J. NARDINI, MYRNA PÉREZ, Circuit Judges.

**SUMMARY ORDER**

***1**

* * *

Plaintiff-Appellant Paul White, *pro se* and incarcerated, appeals from the April 26, 2022, and August 1, 2022, *sua sponte* dismissals of two federal lawsuits (Mae A. D'Agostino, *District Judge*), each pursuant to the *Rooker-Feldman* doctrine. White's appeals have been considered in tandem and consolidated for disposition. In 2015, White was convicted in New York state court of grand larceny and fraud, stemming from a scheme to defraud investors in a North Carolina real estate development. *See Spota v. White*, No. 29681-12, 2016 WL 6427362, at *2, 4 (N.Y. Sup. Ct. Suffolk Cnty. Oct. 28, 2016) (explaining the background of the criminal case in a decision on a civil forfeiture proceeding). The Supreme Court, Suffolk County, awarded $2.975 million in restitution to his victims, who included Sandra Schmidt, Teodocia Santos, and Ella and Albert Abney (the "Abneys"). *Id.* at *2. White's appeal of the criminal judgment is, as of the time of writing, still pending.

In 2014, the Suffolk County District Attorney's Office brought a civil forfeiture action against White and obtained a $2.4 million judgment. *Id.* at *4, 9. After the judgment was entered, White retained an attorney who obtained a decision in a North Carolina court, which he claims held that the investors had received their bargained-for-benefit, consisting of the validly deeded ownership of the property.

In 2017, White sued Schmidt and the Abneys in the Eastern District of New York, claiming that they had provided false statements to the Suffolk County District Attorney's Office and had testified falsely at grand jury proceedings and at his criminal trial, which resulted in their unjust enrichment by virtue of the restitution judgment that had been entered in their favor. In two different orders, the Eastern District dismissed the action, reasoning that the defendants were entitled to witness immunity, and in the alternative, the court lacked subject matter jurisdiction to entertain the unjust enrichment claim under *Rooker-Feldman*. *See generally White v. Abney*, No. 17-cv-4286, 2020 WL 5848647 (E.D.N.Y. Sept. 30, 2020); *White v. Abney*, No. 17-cv-4286, 2021 WL 1176218 (E.D.N.Y. Mar. 29, 2021).

In 2021, White filed the actions underlying these appeals. He sued Schmidt in the Northern District of New York, claiming that the restitution judgment had been satisfied by the North Carolina decision and that she had been unjustly enriched by a sum that he had separately paid to her. In a separate action, he sued Santos and the Abneys, raising substantially identical claims.

In 2022, the district court *sua sponte* dismissed each action as barred under the *Rooker-Feldman* doctrine and,

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

alternatively, by collateral estoppel or *res judicata*, based on the preclusive effect of the Eastern District's earlier *Rooker-Feldman* procedural holding. *See generally White v. Schmidt,* No. 21-cv-854, 2022 WL 1222805 (N.D.N.Y. Apr. 26, 2022); *White v. Santos*, No. 21-cv-417, 2022 WL 3025723 (N.D.N.Y. Aug. 1, 2022). White timely appealed. We assume the parties' familiarity with the case.

***2** We review *de novo* a *sua sponte* dismissal of a complaint, including a dismissal based on collateral estoppel, *res judicata*, or lack of subject matter jurisdiction under *Rooker-Feldman*. *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*sua sponte* dismissal); *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 368 (2d Cir. 1997) (collateral estoppel and *res judicata*); *Edwards v. McMillen Cap., LLC,* 952 F.3d 32, 35 (2d Cir. 2020) (*Rooker-Feldman*). When reviewing a *sua sponte* dismissal, we "accept all of the facts alleged in the complaint as true and draw all inferences in the plaintiff's favor." *Harnage v. Lightner*, 916 F.3d 138, 140–41 (2d Cir. 2019). [1]

1 Unless otherwise indicated, case quotations omit all internal quotation marks, alteration marks, footnotes, and citations.

Recognizing the "special solicitude" this Court must afford *pro se* litigants, *see Rosa v. Doe*, 86 F.4th 1001, 1007 (2d Cir. 2023), we nevertheless conclude that White's claims against Schmidt and the Abneys are barred by *res judicata*, or claim preclusion. "[C]laim preclusion ... operates in two ways: (1) it bars claims that were brought and decided in a prior litigation; and (2) it bars all other claims relating to the same transaction against the same defendant that could have been brought at that time." *N. Assurance Co. of Am. v. Square D Co.*, 201 F.3d 84, 87 (2d Cir. 2000). *White v. Abney* involved claims by White against Schmidt and the Abneys, so claim preclusion bars him from now raising any claims "relating to the same transaction ... that could have been brought" at the time he filed suit in *White v. Abney*. *Id.* White alleges that the following had occurred before he filed his complaint in *White v. Abney*: (1) the Suffolk County Court entered restitution judgments in favor of Santos, the Abneys, and Schmidt against White, (2) White obtained a decision from the North Carolina Superior Court determining that the defendants in these cases held valid deeds for the properties at issue, and (3) White paid approximately $31,000 each to Schmidt and the Abneys in partial satisfaction of the restitution judgments.

In the present cases, White seeks a declaratory judgment that the Suffolk County Court restitution judgments against him were satisfied by the North Carolina decision, and a return of the money he has paid to the defendants based on a theory of unjust enrichment distinct from the theory of unjust enrichment White relied on in *White v. Abney*. However, because White allegedly paid the defendants a partial restitution before the North Carolina decision was issued, and the North Carolina decision was issued before White initiated *White v. Abney*, White could have included his current claims for declaratory relief and unjust enrichment against Schmidt and the Abneys in *White v. Abney*. Accordingly, White's claims against Schmidt and the Abneys are barred by *res judicata.*

Santos, however, was not included as a defendant in *White v. Abney*, so claim preclusion cannot apply to White's current claims against Santos. *See N. Assurance*, 201 F.3d at 87. We therefore consider whether White's claims against Santos are barred under the *Rooker-Feldman* doctrine or collateral estoppel, as the district court found. We determine that they are not. Under the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). For a federal court to abstain under *Rooker-Feldman*,

> ***3** (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced.

*Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 641 (2d Cir. 2021). Here, the relevant state-court judgment is the criminal restitution judgment, which White alleges has been satisfied, not the civil forfeiture judgment. The civil forfeiture court did not address White's challenge to the restitution order, explaining instead that White's challenge was an improper collateral attack on the criminal conviction, which had to be raised instead on direct criminal appeal. *See Spota*, 2016 WL 6427362, at *4. Thus, if White is


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

complaining of an injury from a state-court judgment, the relevant judgment is the criminal restitution judgment.

The application of *Rooker-Feldman* here was improper because the criminal restitution judgment was not final at the time the federal lawsuit commenced. In *Hunter v. McMahon*, 75 F.4th 62, 65, 67, 70–71 (2d Cir. 2023), this Court concluded that the *Rooker-Feldman* doctrine could not apply when an appeal remains pending in state court at the time a complaint is filed, because *Rooker-Feldman* applies only after state-court proceedings have "ended." Because White's criminal appeal remains pending, the relevant state court proceeding had not concluded before White filed his complaint. Accordingly, the district court erred by dismissing the complaint based on *Rooker-Feldman.*

Although the district court alternatively dismissed the complaint on the basis of collateral estoppel, we do not affirm on this ground. In *White v. Abney*, the Eastern District dismissed White's complaint against Schmidt under the *Rooker-Feldman* doctrine. *Abney*, 2020 WL 5848647, at *7. While collateral estoppel can bar reconsideration even of erroneous prior rulings, our decision in *Hunter* amounted to a significant clarification of our law on this fairly significant issue of *Rooker-Feldman*'s proper scope. *See Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 37 (2d Cir. 2005) ("[E]ven where the specified elements of collateral estoppel are present, reexamination of a legal issue is appropriate where there has been a change in the legal landscape after the decision claimed to have preclusive effect."). Accordingly, we do not affirm the judgment based on the preclusive effect that the *Rooker-Feldman* holding in *White v. Abney* might have.

* * *

In sum, the district court erred by relying on the *Rooker-Feldman* doctrine to *sua sponte* dismiss White's complaints. We decline to affirm on the alternative grounds of collateral estoppel. However, the district court's judgments with respect to Schmidt and the Abneys can be affirmed on the alternative ground of *res judicata.* We express no view on the merits (or lack thereof) of the underlying suit against Santos, which is better addressed by the district court in the first instance.[2] Therefore, the judgments of the district court are **AFFIRMED IN PART** and **VACATED IN PART** and **REMANDED** for further proceedings.

2 We acknowledge that the district court may decide that a stay is warranted pending the outcome of the criminal restitution judgment appeal. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005) ("Comity or abstention doctrines may, in various circumstances, permit or require the federal court to stay ... the federal action in favor of the state-court litigation.").

**All Citations**

Not Reported in Fed. Rptr., 2024 WL 1266245

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (10)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Appellant's Brief**<br>Paul WHITE, Appellant-Plaintiff, v. Teodicia SANTOS and Ella Abney, Personally, and Ella Abney as Executrix of the Estate of Albert Abney, Respondents-Defendants.<br>2022 WL 10084079 | PDF | C.A.2 | Sep. 28, 2022 | Brief |
| **2. Appellant's Brief**<br>Paul WHITE, Appellant-Plaintiff, v. Teodicia SANTOS and Ella Abney, Personally, and Ella Abney as Executrix of the Estate of Albert Abney, Respondents-Defendants.<br>2022 WL 1468427 | PDF | C.A.2 | Apr. 18, 2022 | Brief |
| **3. Appellant's Brief**<br>Paul WHITE, Appellant-Plaintiff, v. Sandra SCHMIDT, Respondent-Defendant.<br>2022 WL 1468431 | PDF | C.A.2 | Mar. 18, 2022 | Brief |
| **4. Appellant's Brief**<br>Paul WHITE, Appellant-Plaintiff, v. Sandra SCHMIDT, Respondent-Defendant.<br>2022 WL 1468434 | PDF | C.A.2 | Mar. 18, 2022 | Brief |
| **5. Docket 22-1911**<br>White v. Santos | — | C.A.2 | Sep. 01, 2022 | Docket |
| **6. Docket 22-1267**<br>White v. Schmidt | — | C.A.2 | June 06, 2022 | Docket |
| **7. Docket 22-89**<br>White v. Santos | — | C.A.2 | Jan. 14, 2022 | Docket |
| **8. Docket 22-92**<br>White v. Schmidt | — | C.A.2 | Jan. 14, 2022 | Docket |
| **9. Docket 1:21-CV-00854**<br>White v. Schmidt et al | — | N.D.N.Y. | July 29, 2021 | Docket |
| **10. Docket 1:21-CV-00417**<br>White v. Santos et al | — | N.D.N.Y. | Apr. 13, 2021 | Docket |

 © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History (12)**

**Direct History (12)**

1. White v. Schmidt
2021 WL 3856741 , N.D.N.Y. , Aug. 30, 2021

*Appeal Dismissed by*

2. White v. Schmidt
2022 WL 17406134 , 2nd Cir. , Apr. 21, 2022

*AND Report and Recommendation Adopted by*

3. White v. Schmidt
2022 WL 1222805 , N.D.N.Y. , Apr. 26, 2022

*Affirmed in Part, Vacated in Part, Remanded by*

4. White v. Schmidt
2024 WL 1266245 , 2nd Cir.(N.Y.) , Mar. 26, 2024

*On Remand to*

5. White v. Santos
2025 WL 1610573 , N.D.N.Y. , Mar. 10, 2025

*Report and Recommendation Adopted by*

6. White v. Santos
2025 WL 1275846 , N.D.N.Y. , May 02, 2025 , appeal dismissed (2d Cir. 25-1462) ( Nov 25, 2025 )

7. White v. Santos
2021 WL 6339606 , N.D.N.Y. , Oct. 18, 2021

*Appeal Dismissed by*

8. White v. Santos
2022 WL 18282866 , 2nd Cir. , Apr. 21, 2022

 © 2026 Thomson Reuters. No claim to original U.S. Government Works.

*AND Report and Recommendation Adopted by*

9. White v. Santos
2022 WL 3025723 , N.D.N.Y. , Aug. 01, 2022

*Affirmed in Part, Vacated in Part, Remanded by*

10. White v. Schmidt
2024 WL 1266245 , 2nd Cir.(N.Y.) , Mar. 26, 2024

*On Remand to*

11. White v. Santos
2025 WL 1610573 , N.D.N.Y. , Mar. 10, 2025

*Report and Recommendation Adopted by*

12. White v. Santos
2025 WL 1275846 , N.D.N.Y. , May 02, 2025 , appeal dismissed (2d Cir. 25-1462) ( Nov 25, 2025 )

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 1090583
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Javell FOX, Plaintiff,
v.
Cory ZENNAMO, Defendant.

6:15-cv-0587 (LEK/ATB)
|
Signed 03/18/2016

**Attorneys and Law Firms**

Javell Fox, Romulus, NY, pro se.

David A. Bagley, Kernan Professional Group, LLP, Oriskany, NY, for Defendant.

**DECISION and ORDER**

Lawrence E. Kahn, U.S. District Judge

## I. INTRODUCTION

***1** *Pro se* Plaintiff Javell Fox ("Plaintiff") commenced the present action against Defendant Cory Zennamo ("Defendant") in Oneida County Supreme Court pursuant to 42 U.S.C. § 1983. Dkt. No. 2 ("Complaint"). Defendants removed the case to the Northern District on May 13, 2015. Dkt. No. 1 ("Notice of Removal"). Presently before the Court is Defendants' Motion to dismiss. Dkt. Nos. 3 ("Motion"); 3-2 ("Memorandum"). For the following reasons, the Motion is granted, and Plaintiff's Complaint is dismissed with prejudice.

## II. BACKGROUND [1]

1 Because this case is before the Court on a motion to dismiss for failure to state a claim, the allegations of the Complaint are accepted as true and form the basis of this section. See boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir. 2011) (noting that, in addressing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[ ] all reasonable inferences in her favor"). Furthermore, as Plaintiff is proceeding *pro se*, the Complaint "must be construed liberally and interpreted to raise the strongest arguments that they suggest." Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)).

Plaintiff is currently incarcerated pursuant to a 2012 conviction, having been represented by Defendant in the underlying criminal case. Compl. ¶¶ 2-3, 31. [2] Plaintiff claims that during the pendency of those criminal proceedings, Defendant rendered ineffective assistance of counsel through violations of the Rules of Professional Conduct, failure to raise various defenses, and failure to request a different judge once prejudicial information had been disclosed. Id. ¶¶ 4-15, 20-22, 29. Plaintiff commenced the instant action on February 25, 2015 in Oneida County Supreme Court, generally alleging a deprivation of his constitutional rights. Notice Removal ¶ 1; Compl. at 2. [3] Defendant then removed the case to the Northern District based on federal question jurisdiction on May 13, 2015. Notice Removal ¶ 4. Defendant filed a Motion to dismiss on May 18, 2015. Mot. Defendant states that he cannot be held liable under 42 U.S.C. § 1983 as a matter of law, since public defenders do not act under color of state law. Mem. at 5. [4] Plaintiff filed a Response on February 26, 2016, along with a Motion to amend and a Proposed Amended Complaint. Dkt. No. 17 ("Motion to Amend"); [5] 18 ("Response"). [6] Plaintiff, in his Proposed Amended Complaint, added further facts regarding Defendant's representation and added as his new first cause of action an attorney malpractice claim. Mot. Amend at 5-9, 16. Plaintiff's Response included further facts and supporting caselaw regarding the merits of his ineffectiveness claim. Resp. at 4-6; Dkt. No. 18-1 ("Response Affirmation"). Defendant filed a Reply on March 15, 2016 stating that Plaintiff's addition of a malpractice claim would not defeat the dismissal of the federal law claim. Dkt. No. 19 ("Reply").

2 Neither party has pleaded the underlying facts of Plaintiff's conviction, so the Court will take judicial notice of Plaintiff's records on the Department of Corrections and Community Supervision ("DOCCS") website, where Plaintiff's current term of confinement is listed under DIN 12B1626. See Inmate Information, N.Y. Dep't of Corr. & Community Supervision, http://nysdoccslookup.doccs.ny.gov (last visited Mar. 15, 2016). It appears that Plaintiff was returned from parole and convicted of criminal possession of a

controlled substance in the third degree and in the fourth degree. Id. Plaintiff has been housed in the state system since June 1, 2012, eleven days after the sentencing date pleaded in his Complaint. Id.

3 For all citations to sections of the Complaint that are not in paragraph form, the Court uses the pagination assigned by the Court's Electronic Court Filing ("ECF") system.

4 The Court uses the pagination assigned by ECF.

5 The Proposed Amended Complaint is found on pages 3-16 of Dkt. No. 17. The Court uses the pagination assigned by ECF.

6 Plaintiff's Response is timely due to six Letter Motions requesting extensions of his time to file a response. Dkt. Nos. 5; 7; 9; 11; 13; 15. The Court granted each extension in full or in part, extending Plaintiff's time to file a response to March 7. Dkt. Nos. 6; 8; 10; 12; 14; 16.

## III. DISCUSSION

***2** To survive a motion to dismiss pursuant to Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6). A court must accept as true the factual allegations contained in a complaint and draw all inferences in a plaintiff's favor. See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006).

### A. Public Defender Liability under § 1983

Section 1983 provides a private right of action for redress of constitutional violations "'under color' of law." Terebesi v. Terreso, 764 F.3d 217, 230 (2d Cir. 2014). The Supreme Court has held that public defenders only act under color of law in limited circumstances: "for example ... when making hiring and firing decisions on behalf of the State[,] ... performing certain administrative and possibly investigative functions[, or] for malpractice ... under state tort law." Polk County v. Dodson, 454 U.S. 312, 325 (1981). However, "when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding," public defenders are not acting under color of state law. Prisoners "have a constitutional right of access to the courts." Id. Therefore, public defenders are not subject to suit under § 1983 if the case and controversy arises out of their traditional functions. Rodriguez v. Weprin, 116 F.3d 62, 65-66 (2d Cir. 1997).

In this case, Plaintiff has alleged that Defendant rendered ineffective assistance of counsel and failed to adhere to various standards of representation. See Compl. These allegations are all squarely within the "traditional functions as counsel" and do not implicate any of the exceptions listed above. As the Supreme Court stated in Polk County, "an indigent prisoner retains the right to initiate state and federal habeas corpus proceedings. ... [T]his normally is the most important form of judicial relief." 454 U.S. at 325 n.18. Therefore, Plaintiff's allegations, even accepted as true, do not set forth an actionable claim under § 1983.

### B. Motion to Amend

When a plaintiff moves to amend a pleading, "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2); Foman v. Davis, 371 U.S. 178, 182 (1962). However, a court does not have to grant leave to amend "where the proposed amendment would be 'futil[e].'" Williams v. Citigroup Inc., 659 F.3d 208, 214 (2d Cir. 2011) (alteration in original). A proposed amendment is futile if the "proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." Doughterty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002).

Plaintiff's Proposed Amended Complaint first restates his ineffectiveness claim against Defendant, with further facts to support his claim. Mot. Amend at 5-9. However, as Defendants point out, Reply at 2, Plaintiff's claim is still not cognizable due to the underlying facts being directly a result of Defendant's "traditional functions as counsel." Polk County, 454 U.S. at 325. Therefore, Plaintiff's constitutional claim would not be able to withstand a motion to dismiss under Rule 12(b)(6).

Plaintiff's additional claim is an attorney malpractice claim, which is traditionally a state law claim. See Harrison v. New York, 95 F. Supp. 3d 293, 330 (E.D.N.Y. 2015) (dismissing malpractice claim due to lack of supplemental jurisdiction after dismissing constitutional ineffectiveness claim). While a district court has supplemental jurisdiction over all state-law claims that are "part of the same case or controversy" as any claim with federal subject matter jurisdiction, 28 U.S.C. § 1367(a), that court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction," id. §

1367(c). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). Because Plaintiff's federal claims have been dismissed at this early stage of litigation, the Court finds that exercising supplemental jurisdiction solely over Plaintiff's malpractice claim would be improper given that there is no relevant federal consideration favoring retention. Harrison, 95 F. Supp. 3d at 330; see also Nazzaro v. Balber, No. 05 Civ. 2172, 2005 WL 1251785, at *5-6 (S.D.N.Y. May 25, 2005) (retaining legal malpractice claim when the question of deficient performance turned on the question of "severance pay and/or deferred compensation arising from their ERISA benefits plans"). Therefore, because Plaintiff's Proposed Amended Complaint would not survive a Rule 12(b)(6) motion, Plaintiff's Motion to amend is denied.

## IV. CONCLUSION

***3** Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion (Dkt. No. 3) to dismiss is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Motion (Dkt. No. 17) to amend is **DENIED**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 2) is **DISMISSED with prejudice**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

### All Citations

Not Reported in Fed. Supp., 2016 WL 1090583

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 6:15-CV-00587** Fox v. Zennamo | — | N.D.N.Y. | May 13, 2015 | Docket |

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History**

There are no History results for this citation.

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 11921904
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ahmed S. KHALIL, Plaintiff,
v.
GENERAL ELECTRIC CORP, et al., Defendants.

5:22-CV-312 (GTS/ATB)
|
Signed December 1, 2023

**Attorneys and Law Firms**

AHMED S. KHALIL, Plaintiff, pro se.

**ORDER and REPORT-RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

***1** On May 16, 2022, I issued an Order and Report-Recommendation after an initial review of the plaintiff's civil rights complaint, pursuant to 28 U.S.C. § 1915. (Dkt. No. 8) ("May 2022 ORR"). In the May 2022 ORR, I granted the plaintiff's motion to proceed in forma pauperis ("IFP"), but recommended dismissal of the complaint, without prejudice to plaintiff filing an amended complaint as to certain claims. (*Id.* at 39-42). On September 15, 2023, the Honorable Glenn T. Suddaby accepted and adopted the May 2022 ORR in its entirety, and directed that any amended complaint be returned to me for further review. (Dkt. No. 16). Plaintiff filed an amended complaint on October 30, 2023, which is now before me pending review. (Dkt. Nos. 17, 18) ("AC").

## I. The Amended Complaint

Plaintiff's amended complaint is equally, if not more, difficult to decipher as compared to his original complaint. (*Compare* Dkt. No. 1 ("Compl.") *with* AC). The amended pleading presents as a confusing stream of consciousness replete with spelling and grammatical errors, and includes over 90 named and Jane/John Doe defendants. (AC at 2-22). The recitation of facts in the amended complaint, which are not presented in any chronological order, concern plaintiff's purported involvement with the Central Intelligence Agency ("CIA") via his employment with General Electric ("GE"), his enrollment as a graduate student at Clarkson University, and criminal investigations of him which, apparently, ultimately led to his incarceration. (*See generally* AC). As best the court can decipher, plaintiff's factual allegations are substantially similar to those raised in his original complaint, with the exception of several new claims arising while he was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). (*Compare* Compl. *with* AC).

Notwithstanding the overarching futility of the claims raised in plaintiff's original complaint, I undertook a careful analysis of the named defendants and claims in my May 2022 ORR. For this reason, and considering the plaintiff's continued failure to present this court with an overall coherent pleading, the court will not endeavor to restate the factual allegations as pled in the amended complaint, but will address them as necessary in assessing the sufficiency of plaintiff's claims.

## II. Defendants GE and Clarkson University

### A. State Action/§ 1983 Claim

In the May 2022 ORR, I explained that, in order to be liable for a section 1983 violation, the defendant must act under color of state law. (May 2022 ORR at 7-8). I further discussed that defendants GE and Clarkson University were private entities, and that plaintiff failed to allege how any conduct on their behalf amounted to state action, including any purported cooperation with law enforcement and/or federal government agencies. (*Id.* at 7-8, 14-15).

Plaintiff has again named GE and Clarkson University in his amended complaint, making substantially similar factual allegations relating to these defendants. Many of the allegations are impossible to understand, despite the court's most liberal reading. In any event, plaintiff's baseless and unsupported claims that GE and Clarkson University were "front companies" for the CIA still do not suffice to establish a conspiracy or state action for purposes of this review, much less state a plausible cause of action. Accordingly, and for the reasons more fully set forth in the May 2022 ORR, the amended complaint should be dismissed without prejudice, but without leave to amend, [1] as against GE and Clarkson University for lack of subject matter jurisdiction, to the extent it raises any section 1983 claims against these entities.

1 In the May 2022 ORR, which the district court adopted in its entirety, I recommended that the original complaint be dismissed **without** leave to

amend as against GE and Clarkson University. (May 2022 ORR at 41).

**B. Employment Discrimination**

***2** Plaintiff alleges that he was employed by General Electric since at least 2013, where he was trained to work in various capacities including gas turbine field engineer, steam turbine field engineer, and generator second man. (AC at 32, 34-35). He states that his field service reports were evaluated as "some of the best out [of] the group, extremely detailed and are a model for others to follow[.]" (AC at 35).

Plaintiff further alleges that

> On or about January 1 st, 2017 I was promoted to "Lead Steam Turbine Application Engineer" the job I applied for originally, on or about January 1 st, 2017 "Lead Engineer-Mechanical Component" in order to maliciously do the illegal firing on April 30, 2017.

(AC at 35).

Plaintiff then alleges several instances of "discrimination" that occurred prior to his "illegal firing," including a supervisor's comment that " 'this shouldn't be done like this, you may do it like this in the Middle East,' or words to that effect." (AC at 36). He also states that a GE coworker "repeatedly posted offensive images and comments on social media targeting [plaintiff's] religion and national origin," citing to specific instances. (*Id.*). Plaintiff further alleges that on July 17, 2014, he was subject to "clear discriminatory treatment" based upon an email exchange regarding his citizenship status. (*Id.*). Plaintiff states that he has "repeatedly suffered harassing statements from his manager" regarding his religion, and suggestions that plaintiff change his first name to an "American name," which plaintiff told his manager "made him uncomfortable." (AC at 37). Plaintiff alleges that when he interviewed for his position at GE, the interviewer "mocked his name." (*Id.*). Between January 20, 2017, and February 17, 2017, plaintiff's coworker made continuing, "derogatory" comments about plaintiff having been "raised in a ... dangerous place, Cairo." (*Id.*). Plaintiff also states that during this time, he "repeatedly applied for promotions, and never got called for interviews, despite his good work and numerous accolades." (*Id.*). He alleges that although he "properly" identified himself as "white" on his employment application, he was re-classified as "two or more races," which he unsuccessfully attempted to change "from 2013 to 2016[.]" (*Id.*).

Plaintiff states that on or about March 23, 2017, he "was told" he would be fired, and that his lawyer at the time sent GE a "demand letter stat[ing] some complaints [plaintiff] filed at GE[.]" (AC at 35). He claims that in April 2017, GE informed him that he was "under investigation," and on or about April 30, 2017, the CIA, FBI, and GE "breached the contract between themselves and [plaintiff,]" and that GE "wanted [plaintiff] to sign to waive [his] right to pursue covered claims against the company ... which [he] did not sign[.]" (AC at 38).

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), makes it unlawful for an employer to "discriminate against any individual with respect to his ... terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42. U.S.C. § 2000e-2(a). In a Title VII discrimination case, the plaintiff must allege two elements: "(1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin." *Lorefice v. New York*, No. 22-2037-CV, 2023 WL 7271838, at *2 (2d Cir. Nov. 3, 2023) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015)).

***3** Liberally construed, plaintiff alleges that he was subjected to wrongful termination and a hostile work environment in violation of Title VII, based on, at least, his national origin and religion. "Title VII, however, also requires a claimant who desires to bring a suit in federal court to file a charge of discrimination with the [Equal Employment Opportunity Commission ("EEOC")] within one hundred eighty (180) days 'after the alleged unlawful employment practice occurred,' or within three hundred 300 days of the alleged discrimination if the claimant 'has initially instituted proceedings with a State or local agency with authority to grant or seek relief ... or to institute criminal proceedings.' " *McNight v. Dormitory Auth. of State of N.Y.*, 995 F. Supp. 70, 76 (N.D.N.Y. 1998) (quoting 42 U.S.C. § 2000e-5(e)). Thus, "only after charges are brought before the EEOC and a right-to-sue letter is obtained may an aggrieved party bring an action for relief in federal court." *Mazzeo-Unum v. Dep't of Transp.*, No. 12-CV-1856 (TJM), 2013

WL 2636159 (N.D.N.Y. June 12, 2013) (citing 42 U.S.C. § 2000e-5(e)); *Dollinger v. State Ins. Fund*, 44 F. Supp. 2d 467, 474 (N.D.N.Y. 1999) (citing *Niroomand v. Erie Cnty. Med. Ctr.*, 94-CV-21E(H), 1996 WL 328183, at *7 n.20 (W.D.N.Y. June 4, 1996)) (additional citations omitted); *see also Pietras v. Board of Fire Comm'rs*, 180 F.3d 468, 474 (2d Cir. 1999).

Here, plaintiff fails to allege or otherwise demonstrate that he filed a claim with the EEOC or with any state or local agency, as described in 42 U.S.C. § 2000e-5(e), before commencing this action, and has failed to provide a "right to sue letter" from the EEOC relating to the alleged discrimination described in his amended complaint. Thus, plaintiff has failed to establish the threshold requirements for his Title VII claim. Accordingly, the court recommends that plaintiff's employment discrimination claim be dismissed without prejudice. *Johnson v. Xylem Inc.*, No. 19-CV-0130, 2020 WL 1963125, at *2 (W.D.N.Y. Apr. 16, 2020) (citing *Constantine v. U-Haul Int'l, Inc.*, No. 15-CV-1204 (MAD/CFH), 2015 WL 7272211, at *2 (N.D.N.Y. Nov. 16, 2015) (dismissing the plaintiff's Title VII claim where the plaintiff failed to demonstrate that she received an EEOC right-to-sue letter)); *Parker v. Mack*, No. 09-CV-1049A, 2010 WL 11507368, at *3 (W.D.N.Y. Jan. 4, 2010) (holding that the plaintiff's Title VII claims were subject to dismissal where the plaintiff did not submit a copy of his EEOC right-to-sue letter).

### C. Breach of Contract

The amended complaint reasserts plaintiff's purported breach of contract claims against GE and Clarkson University. (AC at 30). As was the case with plaintiff's original complaint, it remains completely unclear from plaintiff's recitation of facts in the amended complaint how he believes that GE breached a contract with the plaintiff, other than plaintiff's reference to the CIA, FBI, and GE breaching "the contract between themselves and myself," when he was laid off. (AC at 38). Nor has plaintiff referenced how Clarkson University violated any contract that it had with plaintiff, implicit or otherwise. Accordingly, and for the reasons more fully set forth in my May 2022 ORR, the breach of contract claims against GE and Clarkson University, as raised in the amended complaint, should be dismissed with prejudice for failure to state a claim.

## III. Individual Federal Defendants

Plaintiff has identified numerous individual defendants in his amended complaint, whom he identifies as FBI agents, CIA "sources," and a Department of Homeland Security Special Agent. (AC at 4-22). A careful reading of the amended complaint suggests that the majority of the named CIA sources were plaintiff's coworkers and/or supervisors at GE. Another, defendant--Hosseini-Norouei--appears to be the plaintiff's "ex fiancé." (AC at 40). Throughout the amended complaint, plaintiff makes various references to these individuals, alleging that he communicated with some of them.

***4** Plaintiff's allegations as against these defendants, even under the most liberal reading afforded to pro se pleadings, border on the implausible. Specifically, and based on plaintiff's allegations in their entirety, the court has serious doubts concerning his representation that the majority of these defendants were, in fact, covert federal agents. *See Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) ("A court may dismiss a claim as factually frivolous if the sufficiently well-pleaded facts are clearly baseless--that is, they are fanciful, fantastic, or delusional.") (internal quotation marks omitted). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Khalil v. United States*, Nos. 17-CV-2652 & 17-CV-5458, 2018 WL 443343, at *3-4 (E.D.N.Y. Jan. 12, 2018) (dismissing complaint alleging broad conspiracy as frivolous), *Bussie v. IRS Commissioner*, Nos. 16-CV-7006 & 17-CV-157, 2017 WL 395113, at *3 (E.D.N.Y. Jan. 27, 2017) (dismissing "indisputably meritless" complaint as frivolous).

In any event, plaintiff has failed to plausibly allege that any of these individual defendants have engaged in conduct violating his constitutional rights, much less acted in conspiracy to do so. Thus, and for the reasons more fully set forth in the May 2022 ORR, plaintiff's amended complaint should be dismissed with prejudice as against defendants Hosseini-Norouei, Burke, Chow, Marcia, Rosania, Doe #74, Ahmed, Doe #75, Doe #76, Darius, Farzi, Doe #77, Atchan, Ahmadi, Mirbod, and Erath.

## IV. Prosecutorial Immunity

The legal standards for prosecutorial immunity were discussed in the May 2022 ORR, on which I based my recommendation that the original complaint be dismissed with prejudice as against defendants District Attorney Gary Pasqua and Assistant District Attorneys Adam Stone, Jason Marx,[2] and Alex Nichols. (May 2022 ORR at 28-29). Notwithstanding the district court's adoption of my


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

recommendation, plaintiff has reasserted claims against these defendants in his amended complaint. Specifically, plaintiff complains of DA Pasqua and ADA Stone's conduct associated with the prosecution of plaintiff's criminal charges in or around 2019. (AC at 51, 57). Moreover, in the amended complaint plaintiff alleges that ADA Marx appeared for and was "handling" a "family offense petition" and criminal charges against plaintiff pending in St. Lawrence County in 2019. (AC at 67). Because plaintiff has not alleged that these defendants committed any violations outside the scope of their duties concerning the prosecution of plaintiff's criminal charges, the amended complaint should be dismissed with prejudice as against them.

2 In the May 2022 ORR, I interpreted plaintiff's handwritten complaint to identify this defendant as Jason **Mary**. (May ORR at 41). In his typed amended complaint, plaintiff identifies this defendant as Jason **Marx.** (AC at 67).

With respect to ADA Nichols, the amended complaint merely states that ADA Nichols's mother worked at Clarkson University. (AC at 51). Plaintiff has failed to plausibly allege any conduct by ADA Nichols that would amount to a constitutional violation, much less plead that such conduct was outside the scope of his duties as a prosecutor. Accordingly, the amended complaint should be dismissed with prejudice as against ADA Nichols as well.

## V. Defendant Law Enforcement Officers

In his amended complaint, plaintiff names ten St. Lawrence County Deputy Sheriffs/Investigators, three New York State Troopers, two Greene County Deputy Sheriffs, two Village of Potsdam Police Officers, and one Town of Canton Police Officer as defendants. (AC at 2-22). With respect to these defendants, plaintiff generally alleges claims sounding in false arrest, malicious prosecution, conspiracy, fabrication of evidence, and "other events as ... described[.]" (AC at 30). Notably, several of the defendants are not referenced anywhere in the factual recitation of plaintiff's allegations. As discussed in the May 2022 ORR, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983[,]" and supervisory officials may not be held liable merely because they held a position of authority. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Thus, to the extent plaintiff has failed to reference, much less describe the offending conduct of, defendants Bigwarfe, Doe #67, Doe #1, and Doe #6, the amended complaint should be dismissed with prejudice as against them.

***5** Otherwise, plaintiff's purported false arrest, malicious prosecution, conspiracy, and fabrication of evidence claims against the remaining law enforcement agents noted above are completely muddled, conclusory, and otherwise impossible to decipher. Presumably sometime around the time that plaintiff's employment with GE was terminated, he became the subject of a criminal investigation. (AC at 38). Nevertheless, it is nearly impossible to follow plaintiff's narrative of the events giving rise to his purported constitutional violations with respect to these defendants, even under the most liberal of interpretations afforded to pro se litigants. (*See* AC at 38-39, 49, 52-56, 65). In particular, plaintiff makes conclusory statements that his home was "illegally searched" and that he was "falsely arrested." (AC at 52). In the May 2022 ORR concerning these claims, I found that plaintiff's allegations, without more, were insufficient to plausibly allege a constitutional violation. (May ORR at 23-30). Despite being afforded the opportunity to amend his complaint and remedy the noted deficiencies, plaintiff has failed to coherently supplement these claims with any facts which could plausibly form the basis of his purported causes of action. Accordingly, plaintiff's amended complaint should be dismissed with prejudice as against defendants Wells,[3] Coringi, Jones, Doe ##2-5, Maria, Doe # 7, Kroengel, Trimboil, Doe # 73, Fink, and Cole. *See Gonzalez v. City of Kingston Police Dep't*, No. 9:22-CV-1214 (GTS/ML), 2023 WL 2895216, at *2 (N.D.N.Y. Apr. 11, 2023) (dismissing plaintiff's amended complaint with prejudice where plaintiff was already provided one opportunity to amend his complaint, and the amended complaint, like the original pleading, "contain[ed] largely incoherent, rambling and disjointed statements in contravention of Fed. R. Civ. P. 8(a) (2)[.]").

3 Plaintiff is inconsistent with the spelling of many defendants' names, making it further difficult to decipher what allegations he is asserting against whom. For example, plaintiff identifies a "Kevin M. Mwlls" (AC at 4) as a defendant when listing the parties to this action, but later refers to a defendant "Kevin Wells" (AC at 49), who is presumably the same individual. Plaintiff has confused other defendants' names as well, such as Trimboil/Trimboli and Kraengle/Kroengel.

## VI. St. Lawrence County Correctional Facility

**A. Defendant C.O. Salsiburu**

Plaintiff alleges that he was confined to St. Lawrence County Correctional Facility ("C.F.") in or around April 2020. Plaintiff further alleges that on or around April 19, 2020, between 4 a.m. and 4:30 a.m., defendant Corrections Officer Salsiburu "deprived [plaintiff] from [his] prescribed medicine[.]" (AC at 57). Plaintiff alleges that, as the night shift officer, defendant Salsiburu "was in possession of [plaintiff's] medicine to give it to [him] before [he] started [his] Muslim fasting," and that defendant Salsiburu had "clear instructions to do that[.]" (AC at 57). Plaintiff then alleges that defendant Salsiburu "attentionally [sic] called [plaintiff] after [he] started [fa]sting," so he would be unable to take the medicine. (AC at 57).

In the May 2022 ORR, my best interpretation of plaintiff's handwritten complaint suggested that plaintiff was alleging that defendant Salsiburu "accidently" gave plaintiff his medication after plaintiff began his fast. (May ORR at 31). Although still less than clear, a liberal construal of plaintiff's amended complaint suggests that he is alleging defendant Salsiburu "intentionally" gave plaintiff the medication after he began to fast.

"To be entitled to protection under the free exercise clause of the First Amendment, a prisoner must make a threshold showing that the disputed conduct substantially burdened his sincerely held religious beliefs." *Washington v. Chaboty*, No. 09-CV-9199, 2015 WL 1439348, at *9 (S.D.N.Y. Mar. 30, 2015) (alteration and quotation marks omitted); *see also Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006) ("The prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." (citation omitted)). "Determining whether a plaintiff's free exercise rights have been substantially burdened 'requires courts to distinguish important from unimportant religious beliefs, a task for which ... courts are particularly ill-suited." *Brandon v. Kinter*, 938 F.3d 21, 32 (2d Cir. 2019) (quoting Ford, 352 F.3d at 593). As a result, the Second Circuit has been "appropriately wary of making 'conclusory judgments about the unimportance of the religious practice to the adherent.' " *Id.* (quoting *Ford*, 352 F.3d at 593). "While the substantial burden requirement presupposes that there will be cases in which it comfortably could be said that a belief or practice is so peripheral to the plaintiff's religion that any burden can be aptly characterized as constitutionally de minimis, ... establishing a substantial burden is not a particularly onerous task[.]" *Id.* (internal quotation marks and citations omitted).

***6** At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court recommends that plaintiff's First Amendment claim against defendant Salsiburu survive sua sponte review and require a response. In so recommending, the court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

**B. Remaining St. Lawrence County C.F. Defendants and Claims**

Plaintiff has failed to sufficiently amend the remaining claims he attempts to assert against those defendants listed as employees/agents of St. Lawrence County C.F. Plaintiff's original complaint asserted that 56 John Doe defendants failed to feed plaintiff for 19 days. (Compl. at 36). In the May 2022 ORR, I found that while such an allegation could rise to the level of a constitutional violation, plaintiff's allegations failed to do so due to their vague and conclusory nature. (May 2022 ORR at 33). In his amended complaint, plaintiff has replaced the "Doe" defendants with the names of 24 St. Lawrence County C.F. staff, and maintains that these 24 defendants attempted to "murder" plaintiff when they "deprived [him] foods" between April 23, 2020 and May 11, 2020. (AC at 57-58). Notwithstanding plaintiff's identification of the Doe defendants, his general statement that these 24 defendants deprived him of some unspecified amount of food over the course of two and a half weeks, without more, still falls short of stating a claim.

Plaintiff's amended complaint then alleges that, after requesting a religious diet from defendant C.O. Lesault in April 2020, C.O. Lesault told plaintiff that "USA official religion is Christian," and asked plaintiff "what is in the two complain[ts] you filed against Clarkson university[?]" (AC at 58). Plaintiff then asserts that on or about June 29, 2020, defendant C.O. Lesault called him and "made 'white power' hand sign to me[.]" (AC at 58-59). Plaintiff raised a similar claim in his original complaint, although he has now identified defendant John Doe #66 as C.O. Lesault. (*Compare* Compl. at 37 *with* AC at 58-59). Notwithstanding plaintiff's amendments to this claim, plaintiff has failed to allege conduct by C.O. Lesault that would rise to the level of a constitutional violation. Plaintiff does not allege that C.O. Lesault deprived him of his religious diet, and as discussed in the May 2022 ORR, the defendant's purported unprofessional and offensive conduct as alleged does not rise to the level of a constitutional violation. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (use of vulgar or offensive language

is not a constitutional violation, where no injury resulted from the conduct).

Plaintiff next alleges that on or about May 27, 2020, non-party C.O. Gerald Cross gave plaintiff "food with [plaintiff's] name handwritten on the bag[.]" (AC at 59). Plaintiff alleges that soon after, he began to experience abdominal pain. (*Id.*). C.O. Cross stated that there was "no medical to see [plaintiff] till 7:00 AM," but he "did give [plaintiff] unidentified liquid[.]" (*Id.*). Plaintiff states that he was then moved to a different cell, where non-party C.O. Whitmarch gave him more "unidentified liquid." (*Id.*). Plaintiff claims that he began to experience bloody diarrhea, and a nurse checked on him around 7:00 a.m. (*Id.*). Plaintiff alleges that he "informed the housing officer [defendant C.O.] Shown several times," and a nurse came back to check on plaintiff at 1:30 p.m. (*Id.*). Ultimately, plaintiff alleges that he was taken to the hospital where blood work showed "poison trace" in his blood. (*Id.*).

***7** Plaintiff raised similar allegations in his original complaint. (*Compare* Compl. at 37 *with* AC at 59). Although attempting to poison plaintiff could rise to the level of a constitutional violation, plaintiff's allegations still fail to state a claim. At the outset, defendant has not named C.O. Cross or C.O. Whitmarch as defendants, and does not otherwise specifically allege who purportedly attempted to poison him. Nor does plaintiff indicate that he actually ate the food provided by C.O. Cross, and it is entirely unclear if plaintiff is claiming that there was poison in the food he was provided, the unknown liquid, or otherwise. Although plaintiff cites to some "abnormal" test results, they do not, without more, support his allegations that "poison trace" was found in his blood. (*See* AC at 59).

Plaintiff has named St. Lawrence County C.F. doctor Doe # 69 and nurses Doe ##70-72 as defendants in the amended complaint. (AC at 14-15). They are not, however, mentioned anywhere in the body of plaintiff's complaint. Accordingly, plaintiff has failed to allege that these unidentified defendants were personally involved in conduct rising to the level of violating his constitutional rights.

For all of the reasons set forth above, the court recommends that the amended complaint be dismissed with prejudice as against St. Lawrence County C.F. defendants Lesault, Merrill, Lpage, Salisbury,[4] Lawrence, Barr-LaRock, McCollum, Rutkauskas, Perry, Sanchez, Gonzalez, Merrill, Marin, Pharoah, Martin, Warren, Simpson, Sweeney, Kellison, Fitzgerald, Simmons, Hartle, Cole, Lesault, Doe # 69, Doe # 70, Doe # 71, Doe # 72, and Shown.

4 For the sake of clarity, the court notes that plaintiff has named two defendants with similar names who were both purportedly employed as corrections officers at St. Lawrence County C.F. – defendant **Salsiburu**, who allegedly deprived plaintiff of his medication in comport with his Muslim fasting diet, and defendant **Salisbury**, who allegedly deprived plaintiff of food to some extent.

## VII. DOCCS Defendants

### A. Excessive Force

Plaintiff alleges that while incarcerated at Watertown C.F. on or about October 30, 2020, another "murder" was attempted on him when two officers took him inside a sergeant's office, where two more officers and one or two more sergeants were waiting for him. While one of the sergeants was talking to plaintiff, "officers hit [him] on the back of [his] head extremely hard[.]" (AC at 60). Plaintiff alleges that he "did fall from the chair," and they told him to get back up and sit down, while keeping his hands inside his pockets. (*Id.*). Plaintiff states that while one of the sergeants was "threatening" him, plaintiff "was getting hit on the back of [his] head continuously and ordering [plaintiff] don't look back[.]" (*Id.*).

Although courts sometimes allow plaintiffs to plead causes of action against a "John Doe" defendant where a plaintiff does not know the defendant's identity, they ultimately require plaintiffs, under Rule 8(a), to allege specific facts that would aid in identifying the defendant and thereby allow defendants to prepare a defense. *See, e.g., Regeda v. City of New York*, No. 09-CV-5427, 2012 WL 7157703, at *8 (E.D.N.Y. Sept. 7, 2012) (noting that a plaintiff, in an amended complaint, must either "identify each [defendant] by name, or else identify them as the 'John Doe defendants' and provide sufficient factual basis to allow the defendants to successfully identify the John Doe defendants and prepare for a defense"), *adopted by* 2013 WL 619567 (S.D.N.Y. Feb. 19, 2013); *Barreto v. Cnty. of Suffolk*, 762 F.Supp.2d 482, 487-88 (E.D.N.Y. 2010) (holding that a complaint against John Doe defendants satisfied Rule 8(a), as liberally applied to pro se complaints, where the plaintiff "identified the specific [jobs] that the John Doe defendants were assigned to, as well as their presence (or lack thereof) at a specified time and place" related to the cause of action, and "provided the grounds for liability with regards

to each of the [d]efendants," such that those defendants had "ample notice as to the nature of the claims brought against them [and] also the opportunity to prepare an intelligent defense"); *Gabriel Capital, L.P. v. Natwest Fin., Inc.,* 137 F. Supp. 2d 251, 269 (S.D.N.Y. 2000) (holding that a complaint "fail[ed] to plead a claim against [John Doe] defendants" under Rule 8(a) where it contained no information specific to the identities or actions of those defendants).

***8** Liberally construed, plaintiff's amended complaint appears to allege that he was subject to excessive force [5] during the above encounter with various corrections officers and sergeants. However, although plaintiff has named a date and location of the alleged incident, he has otherwise failed to sufficiently identify which, or how many, of the generally named "officers" or "sergeants" were involved. Specifically, it is entirely unclear how many, or which, officers hit plaintiff on the back of his head, and how many/which individuals might be liable for failure to intervene in the purportedly unconstitutional use of force.

5 "The right not to be subject to excessive force, perhaps most commonly associated with the Fourth and Eighth Amendments, can also arise under the Fourteenth." *Edrei v. Maguire*, 892 F.3d 525, 533 (2d Cir. 2018). In *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466 (2015), the Supreme Court held that the Fourteenth Amendment's Due Process Clause grants broader protections to pre-trial detainees than the Eighth Amendment's ban on "cruel and unusual punishments" affords to a convicted prisoner. This is because, unlike a convicted prisoner, a pre-trial detainee cannot be "punished" at all. *Edrei*, 892 F.3d at 535. In this case, it is unclear whether plaintiff was a pre-trial detainee or a convicted prisoner at the time of the alleged excessive force incident described above. Assuming the less stringent Fourteenth Amendment standards for purposes of this analysis, then, it is enough to note that in order to state an excessive force claim, a detainee " 'must show only that the force purposely or knowingly used against him was objectively unreasonable.' " *Fletcher v. City of New London*, No. 3:16-CV-241 (MPS), 2018 WL 4604306, at *10 (D. Conn. Sept. 25, 2018) (quoting *Kingsley*, 135 S. Ct. at 2473). " '[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.' " *Kingsley*, 135 S. Ct. at 2473 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Moreover, the failure of corrections officers to employ reasonable measures to protect an inmate or pre-trial detainee from violence by others may rise to the level of a constitutional violation. *See Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985); *Taylor v. City of New York*, No. 16 Civ. 7857, 2018 WL 1737626, at *11 (S.D.N.Y. Mar. 27, 2018) (recognizing failure to protect claims as applicable to pre-trial detainees under the Fourteenth Amendment). At this juncture, further distinguishing between these two categories of claims is unnecessary, because this court is recommending dismissal on a separate basis.

Plaintiff did not assert this claim in his original complaint. Recently, the Second Circuit warned that a pro se plaintiff should be granted the opportunity to amend claims which are asserted for the first time in an amended complaint before entering a sua sponte dismissal with prejudice. *Mitchell v. Annucci*, No. 21-2978-pr (2d Cir. Nov. 21, 2023) (remanding with instruction to, at minimum, allow plaintiff an opportunity to amend the claims raised for the first time in his amended complaint). Accordingly, plaintiff's excessive force claim arising out of the events taking place at Watertown C.F. on October 30, 2020, should be dismissed without prejudice.

### B. Medical Indifference

Plaintiff alleges having experienced a myriad of medical conditions and treatment during his time in DOCCS custody. The court has attempted to interpret plaintiff's allegations in some semblance of chronological order, despite his chaotic pleading of the facts.

#### 1. Factual Allegations

##### i. Condyloma/HPV

***9** Plaintiff alleges that in August 2020, he informed "medical staff" [6] defendant Doe # 81 that there was blood in his stool, and that plaintiff had a sister with colon cancer. (AC at 62). Plaintiff alleges that he was "misdiagnosed with [a] hemorrhoid." (AC at 62). Confusingly, however plaintiff then states that in May 2020, Cape Vincent C.F. "prison medical" Doe # 82 "told [him] that they referred [him] to Gastroenterology," and in June 2020 he underwent a "red blood cell count." (AC at 62). Plaintiff was approved for a colonoscopy in July 2020 [7] to check for colon cancer and

internal bleeding. (AC at 62). Plaintiff alleges that on July 19, 2020, defendant Mr. McCaughan, "director of guidance and counseling" at DOCCS central office, came into the classroom at Cape Vincent C.F. where plaintiff was working. (AC at 62-63). Plaintiff alleges that "just after [defendant McCaughan] left, he was taken to a special housing unit and received a misbehavior ticket." (AC at 63).

6 Plaintiff alleges that Doe # 81 was employed at Watertown C.F. during the underlying events. (AC at 19).

7 Plaintiff has written 20**22**, but based on the context of his pleading it appears that he intended to state the date as 20**20.**

It appears that plaintiff was thereafter subject to some disciplinary proceedings, and placed on suicide watch. (AC at 62-63). On August 9, 2020, by which time it appears he had been transferred to Altona C.F., plaintiff was informed by "medical staff" defendant Doe # 83 that the colonoscopy was still scheduled, and they would call him for preparation. (AC at 63). On October 4, 2020, plaintiff was informed by defendant Joe #84, another medical staff personnel at Altona C.F., that the "current scope is still scheduled." (AC at 63). Plaintiff alleges that he was prescribed medication on October 5, 2020, by defendant doctor Doe # 85. (AC at 63). He states that he was "seen with and informed colonoscopy has been cancelled for a while[.]" (AC at 63). On November 2, 2020, he was taken to Coxsackie C.F. to "see Gastroenterology Jo[h]n Doe # 86[.]" (AC at 63).

Plaintiff alleges that, on December 7, 2020, defendant DOCCS "offender rehabilitation coordinator ('ORC')" J. Bamker "told [plaintiff he] can "get a medical procedure when [he is] released and 'we know about the case against Clarkson St. Lawrence [sic], we would not let you get out to have access to the court, everything is connected.' " (AC at 63). On December 8, 2020, defendant "medical staff member" Caryn Evans stated: "we can't put you in quarantine, keep you in the infirmary[.]" (AC at 63).

Plaintiff alleges that in December 2022, he "requested from [defendant DOCCS] acting commissioner Mr. Anthony J. A[nn]ucci to be considered for medical parole[.]" (AC at 64). He states that he has "not got any answer." (AC at 64).

Plaintiff further alleges that he was eventually taken to Albany Medical Center on or about March 23, 2023, seven days before his release from DOCCS custody, where they performed a colonoscopy. (AC at 64). Plaintiff was seen by a colorectal surgeon on July 21, 2023, after his release from custody, and "surgery was performed" on August 24, 2023, where they found "condyloma which is caused by the Human Papilloma Virus (HPV) lifetime risk for recurrent warts, and increased risk of anal cancer [sic]." (AC at 64).

### ii. Concussion/Brain Injury

Plaintiff alleges that he "reported headaches and eye problems" to the medical staff at Cape Vincent C.F. (AC at 61). In February 2021, defendant nurse Doe #78 "just performed eye exam [sic] and told [plaintiff his] eyes are normal[.]" (*Id.*). Plaintiff alleges that he was eventually referred to an eye doctor by defendant nurse Doe #79 in October 2021, and reading glasses were prescribed by defendant Doe #80 in January 2022. (*Id.*).

Plaintiff then alleges that he was diagnosed with a brain concussion by defendant doctor Qudsi Vigar over two years after his initial complaint of headaches, while confined to Altona C.F. in January of 2023. (AC at 61). Plaintiff refers to a brain MRI conducted in June 2023,[8] which showed "brain damaged partial empty sella," and states that he was told he could not get into outpatient neurosurgery, and should seek emergency room treatment. (*Id.*). Plaintiff states that he was discharged from the emergency room "after [m]ore than 14 hours lumbar puncture was performed [sic]," and he was notified that there was "brain bleeding after the concussion and partial empty sella due to internal scar[r]ed brain tissue[.]" (*Id.*). Plaintiff states, however, that there were "negative" impressions upon examination of his brain, which showed "no acute intracranial abnormality." (AC at 61-62).

8 This appears to have been performed at the direction of plaintiff's private medical provider, after plaintiff was released from custody. *See* AC at 64; *see also* https://nysdoccslookup.doccs.ny.gov/ (last visited November 20, 2023) (indicating that plaintiff was released to parole on March 30, 2023).

### 2. Legal Standards

***10** A convicted prisoner asserting a claim for deliberate indifference to his serious medical needs must plead facts satisfying the two elements of such a claim: (1) an "objective" element, which requires a showing that the medical issue is sufficiently serious, and (2) a "subjective" or "mental"

element, which requires a showing that the defendant acted with at least deliberate indifference to the risk of serious harm. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

The objective element requires allegations that the plaintiff's medical need is a "sufficiently serious" condition that "could result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)); *see also Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (noting that standard contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain"). To satisfy the subjective or "mental" element, a convicted prisoner must allege that a correction official actually "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Darnell*, 849 F.3d at 32 (quoting *Farmer*, 511 U.S. at 837). That is, a convicted prisoner must allege that the official was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also [have] draw[n] the inference." *Id.*

**3. Analysis**

With respect to plaintiff's condyloma/HPV condition, he has failed to plausibly allege a deliberate indifference claim, or any other constitutional violation, with respect to named defendant McCaughan, and the amended complaint should be dismissed as against him. Furthermore, plaintiff has failed to plausibly allege how the conduct described by defendants Doe #81 or Doe #82 rises to the level of deliberate indifference. To the extent Doe #81 "misdiagnosed" plaintiff with a hemorrhoid, such a claim by itself is not cognizable under section 1983. *See Sanders v. Laplante*, No. 3:19-CV-1151, 2019 WL 5538118, at *3 (D. Conn. Oct. 25, 2019) ("[E]ven after *Darnell*, it is well-settled that 'negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim.' ") (*quoting Clay v. Kellmurray*, 465 F. App'x 46, 47 (2d Cir. 2012)). Moreover, plaintiff has failed to plausibly allege how Doe #82's referral to Gastroenterology constituted deliberate indifference, considering plaintiff's representation that he was actually seen for the consult as a result of the referral. (AC at 62). Accordingly, the amended complaint should be dismissed without prejudice as against defendants Doe #81 and Doe #82.

However, mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185,191 (2d Cir. 2008), the court recommends that plaintiff's deliberate medical indifference claims asserted against defendants Doe # 83, Doe # 84, Doe #85, Doe # 86, J. Bamker, and Caryn Evans survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

Conversely, the court finds that plaintiff's allegations stemming from his concussion/brain injury are so vague, confusing and remote, that they fail to plausibly state a claim. According to plaintiff's allegations, he reported headaches and "eye problems" to defendants Doe ##78-80 over three months after he was purportedly hit on the back of the head by other corrections officers in October 2020. Plaintiff, however, does not allege how the treatment provided by these defendants - eye examinations, a referral to an eye doctor, and a prescription for reading glasses - rose to the level of violating plaintiff's constitutional rights. Moreover, plaintiff has failed to plausibly allege how this treatment was related to plaintiff's "brain concussion" diagnosed over two years after his initial complaint. Nor does plaintiff's allegation that defendant doctor Qudsi Vigar "diagnosed" him with a "brain concussion" in January 2023 sufficiently allege a constitutional claim against Dr. Vigar. Accordingly, the complaint should be dismissed without prejudice as against defendants Doe ##78-80 and Dr. Vigar.

***11** Moreover, plaintiff's allegations against defendant Annucci fail to state a claim. It is well settled that "[t]he receipt of letters or grievances, by itself, does not amount to personal involvement." *Leneau v. Ponte*, No. 1:16-CV-776, 2018 WL 566456, at *14–15 (S.D.N.Y. Jan. 25, 2018) (citation and quotation marks omitted); *see also Evans v. Barone*, 3:22-CV-074, 2022 WL 408920, at *6 (D. Conn. Feb. 10, 2022) (finding no personal involvement when the plaintiff "alleges only that [defendant] failed to take any action based on a letter or letters he wrote to them; he does not even allege that they received the letters"); *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) ("[I]f mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose respondeat superior liability." (citation omitted)). Accordingly, plaintiff's allegation, without more, that he sent defendant Annucci a letter requesting medical parole is insufficient to establish personal involvement in a constitutional violation, and the amended complaint should be dismissed as against defendant Annucci without prejudice.

**C. Defendant Rick Gonzalez**

Plaintiff alleges that on September 16, 2021, defendant DOCCS Office of Special Investigation Agent Rick Gonzalez visited plaintiff at Cape Vincent C.F. to train plaintiff on

> detecting and reporting illegal drug activities; communication between me and them included letters phone calls and in person meetings, information included GE, Clarkson some of the defendants and COVID-19 research, I will told that, we want to make sure you are safe, research was COVID-19 gain of function technology to develop US biological weapon jointly with GE and United States government intelligence, Farideh was set up to criminalize you, they went too far to hurt you physically.

(AC at 41). This is the only reference to defendant Gonzalez in the amended complaint. Because plaintiff's incomprehensible allegations as they pertain to defendant Gonzalez, even liberally construed, fail to plausibly allege conduct violating plaintiff's constitutional rights, the amended complaint should be dismissed without prejudice as against this defendant.

**VIII. *Monell* Liability**

In his original complaint, plaintiff named the police departments of several municipalities as defendants, along with the municipalities themselves. Plaintiff has named these same entities as defendants in his amended complaint. (*Compare* Compl. *with* AC). As discussed in the May 2022 ORR, plaintiff's claims against the police departments are subject to dismissal because they are merely "administrative arms of a municipality" and "do not have a legal identity separate and apart from the municipality[,]" thus they are not amendable to suit. (May 2022 ORR at 34-35).

With respect to the municipalities themselves, the district court adopted this court's recommendation to dismiss plaintiff's original complaint as against these entities for failure to allege that the constitutional violations, to the extent any were cognizable, were caused by a policy or custom of the municipality. (May 2022 ORR at 35). Plaintiff's amended complaint likewise fails to allege that any of the purported constitutional violations which he describes were caused by a policy or custom of the municipality. Accordingly, the amended complaint should be dismissed with prejudice as against defendants St. Lawrence County, Greene County, Village of Potsdam, Village of Potsdam Police Department, Town of Canton, Town of Canton Police Department, St. Lawrence County Sheriff's Department, and Greene County Sheriff's Department.

**IX. Defense/Family Attorneys**

Plaintiff alleges that he was the subject of a "malicious[ ]" family offense petition in February 2019, which apparently stemmed "from the same set of allegations" concerning the criminal charges that were pending against him. (AC at 67). Liberally construed, plaintiff appears to allege that his two family court attorneys, defendants James Maswick and Bryan Kennelly, as well as his two criminal defense attorneys, defendants Dan Ramsey and Peter Dumas, afforded him deficient representation and "conspired" with the assistant district attorney concerning the petition/charges pending against him. (AC at 67).

***12** It is unclear from plaintiff's allegations whether his attorneys were privately retained or appointed by the court. Notwithstanding the distinction, plaintiff's claims against these attorneys are subject to dismissal. "It is well-settled that private attorneys and law firms ... do not act under color of state law and are not state actors for purposes of Section 1983 simply by virtue of their state-issued licenses to practice law." *Manko v. Steinhardt*, No. 11-CV-5430, 2012 WL 213715, at *4 (E.D.N.Y. Jan. 24, 2012) (collecting cases); *see also* *Cunningham v. Fisch*, No. 01 Civ. 1123, 2001 WL 1313518, at *4 (S.D.N.Y. Oct. 26, 2001) ("[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983." (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 318 (1981))). Likewise, "a public defender is not a state actor as required for a claim under section 1983." *Welch v. Schenectady Cnty.*, No. 1:22-CV-9 (DNH/DJS), 2022 WL 3904113, at *2 (N.D.N.Y. Aug. 10, 2022), *report and recommendation adopted*, 2022 WL 3908798 (N.D.N.Y. Aug. 30, 2022) (citing *Fisk v. Letterman*, 401 F. Supp. 2d 362, 378 (S.D.N.Y. 2005)). Although a public defender and a private attorney could be held liable under section 1983 if they conspired with state actors, plaintiff here has failed to plead any plausible facts that suggests any of these named attorneys were involved in a conspiracy to inflict


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

an unconstitutional injury. Otherwise, it is clear that a section 1983 action "is not the appropriate vehicle to raise a claim of ineffective assistance of counsel." *Murphy v. Feliciano*, No. 3:17-CV-269, 2017 WL 3699353, at *7 (D. Conn. May 31, 2017); *see also Magassouba v. Cascione, Purcigliotti & Galluzzi, P.C.*, 2021 WL 4692990, at *4 (S.D.N.Y. June 14, 2021), *report and recommendation adopted as modified*, 2021 WL 4198219 (S.D.N.Y. Sept. 15, 2021). Accordingly, the amended complaint should be dismissed without prejudice, but without leave to amend, against defendants Dumas, Ramsey, Maswick and Kennelly.

**X. Defendant "Val"**

In his original complaint, plaintiff briefly states that someone named "Val" helped the district attorney with some unknown administrative help. In my May 2022 ORR, I recommended dismissal of the complaint without prejudice as to this defendant, to provide plaintiff an opportunity to sufficiently allege what constitutional claim this defendant was purportedly responsible for. (May 2022 ORR at 35-38). The amended complaint does not, however, identify any conduct by named defendant Val that would rise to the level of a constitutional violation. Therefore, the amended complaint should be dismissed with prejudice as against defendant Val.

**WHEREFORE**, it is

**RECOMMENDED**, that the amended complaint (Dkt. No. 17) be accepted for filing in part; and it is further

**RECOMMENDED,** that plaintiff's First Amendment free exercise claim against defendant Salsiburu as set forth in the amended complaint (Dkt. No. 17) survives initial review and requires a response; and it is further

**RECOMMENDED,** that plaintiff's Eighth Amendment medical indifference claims against defendants Doe #83, Doe #84, Doe #85, Doe #86, J. Bamker, and Caryn Evans as set forth in the amended complaint (Dkt. No. 17) survive initial review and require a response; [9] and it is further

9 If the district court adopts this recommendation, plaintiff must engage in discovery and take reasonable steps to ascertain the identity of the "John/Jane Doe" defendants remaining in this action. Upon learning the identities of the unnamed defendants, plaintiff must amend the operative complaint to properly name those individuals as parties. If plaintiff fails to ascertain the identity of the Doe defendants so as to permit timely service of process, all claims against those individuals will be dismissed.

**RECOMMENDED,** that plaintiff's § 1983 claims against defendants GE and Clarkson as set forth in the amended complaint (Dkt. No. 17) be **DISMISSED** without prejudice, but without leave to amend; and it is further

**RECOMMENDED,** that plaintiff's Title VII claim against defendant GE as set forth in the amended complaint (Dkt. No. 17) be **DISMISSED** without prejudice; and it is further

**RECOMMENDED,** that plaintiff's remaining claims against defendants GE and Clarkson as set forth in the amended complaint (Dkt. No. 17) be **DISMISSED** with prejudice; and it is further

***13 RECOMMENDED,** that plaintiff's excessive force claim arising from the events taking place at Watertown C.F. on or about October 30, 2020, as set forth in the amended complaint (Dkt. No. 17) be **DISMISSED** without prejudice; and it is further

**RECOMMENDED,** that plaintiff's Eighth Amendment medical indifference claims against defendants McCoughan, Doe #81, Doe #82, Doe #78, Doe #79, Doe #80, Vigar, and Annucci as set forth in the amended complaint (Dkt. No. 17) be **DISMISSED** without prejudice; and it is further

**RECOMMENDED,** that the amended complaint (Dkt. No. 17) as against defendant Gonzalez be **DISMISSED** without prejudice; and it is further

**RECOMMENDED,** that the amended complaint (Dkt. No. 17) as against defendants Dumas, Ramsey, Maswick and Kennelly be **DISMISSED** without prejudice, but without leave to amend, and it is further

**RECOMMENDED,** that the remaining defendants and causes of action set forth in the amended complaint (Dkt. No. 17) be **DISMISSED** with prejudice; and it is further

**RECOMMENDED,** that if the district court adopts this recommendation, any amended complaint be returned to me for any orders relating to service.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written

objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.,* 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 11921904

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (3)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Memorandum of Law in Support of Defendants Deidre Soucia and Seth Richter's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)**<br>Ahmed S. KHALIL, Plaintiff, v. GENERAL ELECTRIC CORP., et al., Defendants. | — | N.D.N.Y. | July 18, 2025 | Motion |
| **2. Memorandum of Law in Support of Defendants Krista Tousignant and Amber Lashway's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)**<br>Ahmed S. KHALIL, Plaintiff, v. GENERAL ELECTRIC CORP., et al., Defendants.<br>2025 WL 5324784 | — | N.D.N.Y. | June 02, 2025 | Motion |
| **3. Docket 5:22-CV-00312**<br>Khalil v. General Electric Corporation et al | — | N.D.N.Y. | Apr. 01, 2022 | Docket |

 © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History (8)**

**Direct History (2)**

1. Khalil v. General Electric Corp
2023 WL 11921904 , N.D.N.Y. , Dec. 01, 2023

*Report and Recommendation Adopted by*

2. Khalil v. General Electric Corp.
2024 WL 3963699 , N.D.N.Y. , Aug. 28, 2024

**Related References (6)**

3. Khalil v. General Electric Corp.
2022 WL 20748025 , N.D.N.Y. , May 16, 2022

*Report and Recommendation Adopted by*

4. Khalil v. General Electric Corp.
2023 WL 5993006 , N.D.N.Y. , Sep. 15, 2023

5. Khalil v. General Electric Corp.
2024 WL 4452694 , N.D.N.Y. , Oct. 09, 2024

6. Khalil v. Tousignant
2025 WL 3211520 , N.D.N.Y. , Nov. 18, 2025

7. Khalil v. Salisbury
2026 WL 865761 , N.D.N.Y. , Mar. 30, 2026

*Appeal Filed by*

8. Khalil v. General Electric Corporation
, 2nd Cir. , Apr. 27, 2026

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 3963699
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ahmed S. KHALIL, Plaintiff,
v.
GENERAL ELECTRIC CORP., et al., Defendants.

5:22-CV-0312 (GTS/MJK)
|
Signed August 28, 2024

**Attorneys and Law Firms**

AHMED S. KHALIL, Plaintiff, Pro Se, 272 Central Ave, Apt. 6, Albany, New York 12206.

**DECISION and ORDER**

GLENN T. SUDDABY, United States District Judge

***1** Currently before the Court, in this *pro se* civil rights action filed by Ahmed S. Khalil ("Plaintiff") against more than 90 individuals and entities ("Defendants"),[1] are (1) United States Magistrate Judge Andrew T. Baxter's Report-Recommendation[2] recommending that certain of the claims in Plaintiff's Amended Complaint survive the Court's *sua sponte* review and that the remainder of those claims be dismissed (some without prejudice and the others with prejudice), and (2) Plaintiff's Objections to the Report-Recommendation. (Dkt. Nos. 16, 21.) For the reasons set forth below, the Report-Recommendation is accepted and adopted in its entirety.

1 For a complete listing of these Defendants, the reader is respectfully referred to the listing of Defendants in, and the factual allegations of, Plaintiff's Amended Complaint (Dkt. No. 17, at 2-27, 30-68), which superseded in their entirety the listing of Defendants in, and the factual allegations of, his original Complaint (Dkt. No. 1, at 2-11, 14-37). Because the following seven individuals are not currently listed as Defendant on the docket sheet (but have been found, in this Decision and Order, to be the subject of actionable claims asserted in Plaintiff's Amended Complaint), the Clerk of Court is directed to add them as Defendants: (1) Salsiburu, Corrections Officer, St. Lawrence County Jail; (2) Jane/John Doe #83, Nurse, DOCCS / Altona Prison; (3) Jane/John Doe #84, Nurse, DOCCS / Altona Prison; (4) Jane/John Doe #85, Nurse, DOCCS / Altona Prison; (5) Jane/John Doe #86, Nurse, Coxsackie Prison; (6) J. Bamker, Offender Rehabilitation Coordinator, DOCCS / Altona Prison; and (7) Caryn Evans, Nurse, DOCCS / Altona Prison. (Dkt. No. 17, at 9, 19-20.)

2 This case was reassigned to U.S. Magistrate Judge Mitchell J. Katz on January 5, 2024. (Dkt. No. 22.)

## I. RELEVANT BACKGROUND

### A. Magistrate Judge Baxter's Report-Recommendation

Generally, in his Report-Recommendation, Magistrate Judge Baxter recommends that the following claims in Plaintiff's Amended Complaint survive the Court's *sua sponte* review (so as to require a response): (1) Plaintiff's First Amendment free exercise claim against Defendant Salsiburu; and (2) Plaintiff's Eighth Amendment medical indifference claims against Defendants Jane/John Doe #83, Jane/John Doe #84, Jane/John Doe #85, Jane/John Doe #86, J. Bamker, and Caryn Evans. (Dkt. No. 20, at 12-14, 30.)

In addition, Magistrate Judge Baxter recommends that the following claims in Plaintiff's Amended Complaint be dismissed without prejudice to amendment in this action (upon a successful motion for leave to amend): (1) Plaintiff's Title VII claim against Defendant General Electric; (2) Plaintiff's excessive force claim arising from the events taking place at Watertown Correctional Facility on or about October 30, 2020; (3) Plaintiff's Eighth Amendment medical indifference claims against Defendants Mr. McCaughan, Jane/John Doe #78, Jane/John Doe #79, Jane/John Doe #80, Jane/John Doe #81, Jane/John Doe #82, Qudsi Vigar, and Anthony J. Annucci; and (4) Plaintiff's claims against Defendant Rick Gonzalez. (*Id.* at 4-7, 17-19, 24-27, 30-31.)

***2** Furthermore, Magistrate Judge Baxter recommends that the following claims in Plaintiff's Amended Complaint be dismissed without prejudice but without leave to amend in this action (due to a lack of subject-matter jurisdiction): (1) Plaintiff's Section 1983 claims against Defendants General Electric and Clarkson University; and (2) Plaintiff's claims against Defendants Dan Dumas, Peter Ramsey, James

Maswick and Bryan Kennelly (all attorneys). (*Id.* at 3, 27-28, 30-31.)

Finally, Magistrate Judge Baxter recommends that the following claims in Plaintiff's Amended Complaint be dismissed with prejudice: (1) Plaintiff's remaining claims against Defendants General Electric and Clarkson University; and (2) Plaintiff's remaining claims against all other Defendants.[3] (*Id.* at 3, 8-11, 14-17, 27, 29, 31.)

3 These Defendants include but not limited to Defendants Farideh Hosseini-Norouei, Christopher J. Burke, Wingming Chow, Brandon Marcia, Francis K. Rosania, Amun (John) Ahmed, Jane/Doe # 69, Jane/Doe # 70, Jane/Doe # 71, Jane/Doe # 72, Jane/Doe # 73, Jane/John Doe #74, Jane/John Doe #75, Jane/John Doe #76, Jane/John Doe #77, Rebert Darius, Bahman Farzi, Maya M. Atchan, Goodarz Ahmadi, Parisa Mirbod, Byron Erath, Jason Marx, Alex Nichols, Kevin M. Wells, Coringi, John E. Jones, Jane/John Doe #2-5, Matthew Maria, Jane/John Doe # 7, Peter T. Kroengel, Judy Trimboil, Kyle Fink, Ryan Cole, Lesault, Alan Merrill, Mark Lpage, Scott Salisbury, Samuel Lawrence, Brandi Barr-LaRock, Michael McCollum, Teressa Rutkauskas, Michael Perry, Larry Sanchez, Dylan Gonzalez, Monica Marin, William Pharoah, Debra Martin, Norman Warren, Stefani Simpson, Nathan Sweeney, Robert Kellison, Justin Fitzgerald, Joshua Simmons, Natolie Hartle, Shown, St. Lawrence County, Greene County, Village of Potsdam, Village of Potsdam Police Department, Town of Canton, Town of Canton Police Department, St. Lawrence County Sheriff's Department, Greene County Sheriff's Department, and "Val." (Dkt. No. 20, at 8-11, 14-17, 27, 29, 31.)

### B. Plaintiff's Objections

Generally, in his Objections, rather than assert the basis of a challenge to any specific finding or recommendation of the Report-Recommendation, Plaintiff identifies a half-dozen statements in the Report-Recommendation, and then either (1) asserts that the statements are somehow inaccurate (without explaining the materiality of the purported inaccuracy) or (2) requests that an Arabic Egypt interpreter be assigned to assist Plaintiff in amending his Amended Complaint. (*See generally* Dkt. No. 21.)

## II. STANDARD OF REVIEW

When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c).[4] When performing such a *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance.[5] Similarly, a district court will ordinarily refuse to consider argument that could have been, but was not, presented to the magistrate judge in the first instance. *See Zhao v. State Univ. of N.Y.*, 04-CV-0210, 2011 WL 3610717, at *1 (E.D.N.Y. Aug. 15, 2011) ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks and citation omitted); *Hubbard v. Kelley*, 752 F. Supp.2d 311, 312-13 (W.D.N.Y. 2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks omitted).

4 *See also* *Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

5 *See* *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a

magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (finding that district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U. S. v. Raddatz*, 447 U.S. 667, 676, n.3 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

***3** When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999). Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review.[6] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*[7]

6 *See Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady*, 09-CV-0924, 2010 WL 3761902, at *1, n.1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue*, 07-CV-1077, 2010 WL 2985968, at *3 & n.3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole*, 04-CV-0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

7 *See also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. ANALYSIS

After carefully reviewing the relevant papers herein, including Magistrate Judge Baxter's thorough Report-Recommendation, the Court can find no error in those parts of the Report-Recommendation to which Plaintiff specifically objected, and no clear error in the remaining parts of the Report-Recommendation: Magistrate Judge Baxter employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons stated therein.

To those reasons, the Court adds only that, although it will continue to extend the full measure of special solicitude to Plaintiff as a *pro se* civil rights litigant, it denies without prejudice his request for an interpreter as both procedurally improper (being unsupported by either an affidavit or a citation to a rule or statute on which the request is based) and lacking a showing of cause (the defects in Plaintiff's claims not appearing able to be rectified by such an interpreter).

**ACCORDINGLY**, it is

**ORDERED** that the Clerk of Court is directed to add as Defendants on the docket sheet the seven individuals identified in note 1 of this Decision and Order; and it is further

**ORDERED** that the Report-Recommendation (Dkt. No. 20) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that the following claims in Plaintiff's Amended Complaint (Dkt. No. 17) **SURVIVE** the Court's *sua sponte* review (so as to a require a response):

***4** (1) Plaintiff's First Amendment free exercise claim against Defendant Salsiburu; and

(2) Plaintiff's Eighth Amendment medical indifference claims against Defendants Jane/John Doe #83, Jane/John Doe #84, Jane/John Doe #85, Jane/John Doe #86, J. Bamker, and Caryn Evans; [8] and it is further

8 Plaintiff is respectfully reminded that, if he does not diligently identify the above-stated Jane/John Doe Defendants, his claims against those Defendants will be dismissed, as stated in note 9 on page 30 of the Report-Recommendation. (Dkt. No. 20, at 30, n.9.)

**ORDERED** that the following claims in Plaintiff's Amended Complaint (Dkt. No. 17) are **DISMISSED without prejudice** to amendment in this action (upon a successful motion for leave to amend):

(1) Plaintiff's Title VII claim against Defendant General Electric;

(2) Plaintiff's excessive force claim arising from the events taking place at Watertown Correctional Facility on or about October 30, 2020;

(3) Plaintiff's Eighth Amendment medical indifference claims against Defendants Mr. McCaughan, Jane/John Doe #78, Jane/John Doe #79, Jane/John Doe #80, Jane/John Doe #81, Jane/John Doe #82, Qudsi Vigar, and Anthony J. Annucci; and

(4) Plaintiff's claims against Defendant Rick Gonzalez; and it is further

**ORDERED** that the following claims in Plaintiff's Amended Complaint (Dkt. No. 17) are **DISMISSED without prejudice** but **without leave to amend in this action** (due to a lack of subject-matter jurisdiction):

(1) Plaintiff's Section 1983 claims against Defendants General Electric and Clarkson University; and

(2) Plaintiff's claims against Defendants Dan Dumas, Peter Ramsey, James Maswick and Bryan Kennelly; and it is further

**ORDERED** that the following claims in Plaintiff's Amended Complaint (Dkt. No. 17) are **DISMISSED with prejudice**:

(1) Plaintiff's remaining claims against Defendants General Electric and Clarkson University; and

(2) Plaintiff's remaining claims against all other Defendants named in the Amended Complaint (including those listed in note 3 of this Decision and Order).

**All Citations**

Not Reported in Fed. Supp., 2024 WL 3963699

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (3)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Memorandum of Law in Support of Defendants Deidre Soucia and Seth Richter's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)**<br>Ahmed S. KHALIL, Plaintiff, v. GENERAL ELECTRIC CORP., et al., Defendants. | — | N.D.N.Y. | July 18, 2025 | Motion |
| **2. Memorandum of Law in Support of Defendants Krista Tousignant and Amber Lashway's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)**<br>Ahmed S. KHALIL, Plaintiff, v. GENERAL ELECTRIC CORP., et al., Defendants.<br>2025 WL 5324784 | — | N.D.N.Y. | June 02, 2025 | Motion |
| **3. Docket 5:22-CV-00312**<br>Khalil v. General Electric Corporation et al | — | N.D.N.Y. | Apr. 01, 2022 | Docket |

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History (8)**

**Direct History (2)**

1. Khalil v. General Electric Corp
2023 WL 11921904 , N.D.N.Y. , Dec. 01, 2023

*Report and Recommendation Adopted by*

2. Khalil v. General Electric Corp.
2024 WL 3963699 , N.D.N.Y. , Aug. 28, 2024

**Related References (6)**

3. Khalil v. General Electric Corp.
2022 WL 20748025 , N.D.N.Y. , May 16, 2022

*Report and Recommendation Adopted by*

4. Khalil v. General Electric Corp.
2023 WL 5993006 , N.D.N.Y. , Sep. 15, 2023

5. Khalil v. General Electric Corp.
2024 WL 4452694 , N.D.N.Y. , Oct. 09, 2024

6. Khalil v. Tousignant
2025 WL 3211520 , N.D.N.Y. , Nov. 18, 2025

7. Khalil v. Salisbury
2026 WL 865761 , N.D.N.Y. , Mar. 30, 2026

*Appeal Filed by*

8. Khalil v. General Electric Corporation
, 2nd Cir. , Apr. 27, 2026

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 542587
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Patrick LAWRENCE, Plaintiff,
v.
Detective SHATTICK, et al., Defendants.

8:24-CV-656 (MAD/DJS)
|
Signed February 19, 2025

**Attorneys and Law Firms**

PATRICK LAWRENCE, 24-B-3717, Cape Vincent Correctional Facility, Route 12E, PO Box 739, Cape Vincent, New York 13618, Plaintiff, Pro se.

## MEMORANDUM-DECISION AND ORDER

Mae A. D'Agostino, United States District Judge:

## I. INTRODUCTION

***1** On May 14, 2024, *pro se* Plaintiff Patrick Lawrence commenced this action against Defendants Detective Shattick, St. Lawrence County Correctional Facility ("St. Lawrence C.C.F."), St. Lawrence County Sheriff's Department (the "Sheriff's Department"), Deputy Yerdon, Deputy Tate, Deputy Merria, Deputy Bundette, Sgt. G. Anderson, James Mcgahan, Bradford Reindeau, Thomas Farrell, Greg Storie, Brooks Bigwarfe, Peggy Harper, Tim Amos, Nurse Kerrigan, Chief Nurse Mayo, Chief Nurse Anita Scott, Sgt. Clary, Nurse 1-100, Correctional Officer 1-100, Kim Richards, K. Hillbourne, Yolanda Thompson, Sara Charpentier, Allison Applebe, and Deputy 1-100 (collectively, "Defendants"), bringing claims for violations of his constitutional rights pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, violation of the Americans with Disabilities Act [1] ("ADA") and Rehabilitation Act [2] ("RA"), as well as state law claims. *See* Dkt. No. 1.

1 *See* 42 U.S.C. §§ 12101-213.

2 *See* 29 U.S.C. § 794.

On September 23, 2024, Magistrate Judge Daniel Stewart issued a Report-Recommendation and Order ("R&R"), recommending that (1) "Plaintiff's Complaint be DISMISSED with prejudice as to Plaintiff's fourth, fifth, seventh, fourteenth, fifteenth, and seventeenth causes of action, as well as, all Eighth Amendment claims, and Defendants Storie, Charpentier, Reindeau, Farrell, Mcgahan, and [St. Lawrence C.C.F.]"; (2) "Plaintiff's sixth, eighth, ninth, tenth, eleventh, [twelfth], and thirteenth causes of action be DISMISSED with leave to amend"; and (3) "Plaintiff's first, second, third, and sixteenth causes of action be permitted to proceed and Defendants be directed to respond." Dkt. No. 11 at 14 (emphasis omitted). Magistrate Judge Stewart also denied Plaintiff's motion for appointment of counsel. *See id.* at 12-14. On December 13, 2024, Plaintiff filed objections to the R&R, which he labels "Amendments and Objections." Dkt. No. 14.[3] On December 29, 2024, Plaintiff filed exhibits and medical records in support of his "Amendments and Objections." *See* Dkt. Nos. 15, 16. For the reasons that follow, the R&R is adopted as modified herein.

3 Plaintiff's objections are sixty pages. *See* Dkt. No. 14. Local Rule 71.2(c) instructs that "[o]bjections may not exceed twenty-five (25) pages without the Court's prior approval." N.D.N.Y. L.R. 72.1(c). The Court will consider the entirety of Plaintiff's objections because he is proceeding *pro se.* However, the Court warns Plaintiff that future compliance with the Federal Rules, the Court's Local Rules, and the undersigned's Individual Rules is required.

## II. BACKGROUND

For a recitation of the background, the parties are referred to the R&R. *See* Dkt. No. 11 at 4.

## III. DISCUSSION

### A. Standard of Review

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL

933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). The district court may also, in its discretion, review recommendations *de novo* even when a party has failed to object or merely asserts general or conclusory objections. *See* *U.S. v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 39 (2d Cir. 1997) ("Although [the] defendant did not object to the magistrate judge's recommendation, ... [t]he record indicates that the district court made a *de novo* determination of the Report and Recommendation .... The court's review was well within its discretion") (citing *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989)). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

***2** "[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Court is obligated to "make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

In general, a court should not dismiss a *pro se* litigant's complaint without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (quotations and citation omitted). In addition, the court should exercise "extreme caution ... in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had the opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). An opportunity to amend, however, is not required where "the problem with plaintiff's cause of action is substantive such that better pleading will not cure it." *Townsend v. Pep Boys, Manny Moe and Jack*, No. 1:13-CV-293, 2014 WL 4826681, *2 (N.D.N.Y. Sept. 29, 2014) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)) (internal quotations marks omitted).

**B. Amendment**

Magistrate Judge Stewart recommends granting Plaintiff leave to amend his complaint as to his sixth, eighth, ninth, tenth, eleventh, twelfth, and thirteenth causes of action. *See* Dkt. No. 11 at 14. Plaintiff asserts that, through his objections, he amends some or all of these causes of action. *See* Dkt. No. 14. A plaintiff may not amend his or her factual allegations though objections to an R&R. *See* *Lombardi v. Choices Women's Med. Ctr., Inc.*, No. 15-CV-05542, 2017 WL 1102678, *3 (E.D.N.Y. Mar. 23, 2017) ("Plaintiff cannot assert a new argument or amend her factual allegations through objections to an R & R") (citing *Yao Wu v. BDK DSD*, 2015 WL 5664534, *1 (E.D.N.Y. Sept. 22, 2015)). Therefore, although Plaintiff will be granted leave amend his complaint for the reasons discussed below, the Court declines to consider the proposed amendments contained within Plaintiff's objections.

**C. Plaintiff's Objections**

Plaintiff does not object to Magistrate Judge Stewart's recitation of the allegations set forth in Plaintiff's complaint. *See* Dkt. No. 14. The Court finds no clear error in the factual background set forth in Magistrate Judge Stewart's R&R and will rely on it throughout this Order. *See* Dkt. No. 11 at 4.

Throughout his objections, Plaintiff reiterates and expands upon his factual allegations, however, he fails to specifically object to many of the procedural deficiencies identified by Magistrate Judge Stewart. *See* Dkt. No. 14. Thus, the majority of the R&R is subject to review for clear error because Plaintiff's objections are conclusory and general. *See* *Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, *2 (N.D.N.Y. Sept. 22, 1997), *aff'd*, 175 F.3d 1007 (2d Cir. 1999) ("Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which [the plaintiff] grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error") (collecting cases). The Court, however, will exercise its discretion to review the R&R *de novo*. *See* *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 263 (E.D.N.Y. 2019), *aff'd*, 815 Fed. Appx. 612 (2d Cir. 2020) ("[T]he Court, in its discretion, may also review [sections of an R&R not objected to] *de novo*") (citing *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976)).

**D. Eighth Amendment Claims**

***3** Magistrate Judge Stewart first recommends dismissing, with prejudice, Plaintiff's claims purportedly brought pursuant to the Eighth Amendment because Plaintiff's


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

allegations pertain to his detention without a conviction and, therefore, do not implicate the Eighth Amendment. *See* Dkt. No. 11 at 5. Plaintiff does not raise specific objections to this recommendation. *See* Dkt. No. 14. Nevertheless, even reviewing the recommendation *de novo*, the Court finds no error.

Indeed, "the Eighth Amendment does not apply 'until after conviction and sentence.' " *Wright v. N.Y. City*, No. 09-CV-2452, 2012 WL 4057958, *3 (E.D.N.Y. Sept. 14, 2012) (quoting *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999)). Plaintiff's claims are premised on allegations related to a traffic stop, arrest, detainment, and pre-conviction court proceedings, *see* Dkt. No. 11 at 4, and, therefore, to the extent Plaintiff states claims pursuant to the Eighth Amendment, the Court adopts Magistrate Judge Stewart's recommendation that such claims be dismissed with prejudice, *see id.* at 5.

## E. Immunity and State Action

### *1. Judicial Immunity*

Magistrate Judge Stewart recommends dismissing all claims asserted against Defendant Storie because he is immune from suit for actions taken in the performance of his judicial duties. *See id.* Plaintiff objects to the application of judicial immunity to his claims against Defendant Storie, arguing that Defendant Storie violated the constitution throughout Plaintiff's criminal court proceedings. *See* Dkt. No. 14 at 54-57 (asserting that Defendant Storie, among other things, "lied on the 730 order" and "silenced [Plaintiff] in his court room in violation of the [First] Amendment"). Plaintiff's arguments merely rehash the allegations in his complaint. *See* Dkt. No. 1 at 19-20.

Exercising its discretion to review this section of the R&R *de novo*, the Court finds no error. " '[J]udges generally have absolute immunity from suits for money damages for their judicial actions' and 'even allegations of bad faith or malice cannot overcome judicial immunity.' " *Tewari v. Sattler*, No. 23-36-CV, 2024 WL 177445, *1 (2d Cir. Jan. 17, 2024) (quoting *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009)). "Judges enjoy absolute immunity from personal liability for acts committed within their judicial jurisdiction .... The absolute immunity of a judge applies however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994) (quotations and internal quotation marks omitted).

Here, Defendant Storie's alleged actions fall squarely within acts undertaken within his judicial jurisdiction and Plaintiff's claims are, thus, barred by judicial immunity. *See Tewari*, 2024 WL 177445, at *1 (affirming application of judicial immunity to claims against a defendant state court judge for alleged violation of the plaintiff's "constitutional rights in connection with various rulings she made during the course of the proceedings"). Accordingly, the Court adopts Magistrate Judge Stewart's recommendation that the claims against Defendant Storie be dismissed with prejudice. *See* Dkt. No. 11 at 5-6, 14.

### *2. Prosecutorial Immunity*

Magistrate Judge Stewart recommends dismissal of the claims against Defendant Charpentier, on the basis of prosecutorial immunity, because "Plaintiff alleges that Defendant Charpentier violated his rights during the presentation of [Plaintiff's criminal] case to the grand jury and in court proceedings." *Id.* at 6 (citing Dkt. No. 1 at 12-15). Plaintiff asserts objections to Defendant Charpentier's dismissal at various points in his sixty-page filing, including, as to his fourth cause of action for "conspiracy," that Defendant Charpentier should not be dismissed because she "attempted to take advantage of [Plaintiff's] mental health disorders and poverty when [she] did conspire to deprive [Plaintiff] of his right to freedom, travel, life, liberty, property, equal protection of the law, and due process," and because Defendant Charpentier lied to, and fabricated evidence presented to, the grand jury. Dkt. No. 14 at 35-39.[4] Despite Plaintiff's policy arguments regarding the doctrine of prosecutorial immunity, all of Defendant Charpentier's alleged conduct occurred while she performed her duties as a prosecutor. *See, e.g.*, Dkt. No. 1 at 12-15.

4 Plaintiff also "urges the Honorable Court to remember that[,] due to the overwhelming evidence[,] 18 U.S.C. § 242 does not allow unconstitutional conduct to go unchecked." Dkt. No. 14 at 35. Plaintiff mentions 18 U.S.C. § 242 at other points in his objections, including in his objection to the dismissal of Defendant Storie. *See id.* at 54-57. However, 18 U.S.C. § 242 is a federal criminal statute that does not create a private right of action. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994). Therefore, Plaintiff is advised that he cannot bring a claim pursuant to 18 U.S.C. § 242. Plaintiff also mentions other criminal statutes throughout his objections,

such as New York State Penal Law § 20.20. *See* Dkt. No. 14 at 3. Plaintiff is advised that he cannot bring civil causes of action pursuant to federal or state criminal statutes and that, if he includes such claims in any amended pleading, they will be subject to dismissal. *See* *Ming v. Brouillete*, No. 6:23-CV-0086, 2023 WL 5779558, *3 (N.D.N.Y. Apr. 7, 2023*), report and recommendation adopted*, 2023 WL 5444485 (N.D.N.Y. Aug. 24, 2023) ("There is no private right of action to enforce state or federal criminal statutes") (collecting cases).

***4** The Court agrees with Magistrate Judge Stewart that the claims against Defendant Charpentier are barred by prosecutorial immunity because this immunity extends to "prosecutors performing prosecutorial activities that are 'intimately associated with the judicial phase of the criminal process.' " *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 530 (2d Cir. 1993) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). "A plaintiff's allegations that a prosecutor violated speedy trial rights, withheld exculpatory evidence, charged a defendant without probable cause, and engaged in prosecutorial misconduct have all been found to be actions that fall within the scope of prosecutorial immunity." *Ramsey v. Smith*, No. 1:19-CV-54, 2020 WL 4053728, *3 (S.D. Miss. July 20, 2020) (citations omitted). Moreover, "[t]he presentation of a case to a grand jury falls squarely within the prosecutor's traditional function and is thus subject to absolute immunity." *Maglione v. Briggs*, 748 F.2d 116, 118 (2d Cir. 1984). Plaintiff's allegations regarding conspiracy between Defendant Charpentier and other defendants does not overcome Defendant Charpentier's prosecutorial immunity, as "a conspiracy claim also falls within the ambit of absolute prosecutorial immunity." *Soley v. Cnty. of Nassau*, No. 18-CV-377, 2022 WL 2954055, *7 (E.D.N.Y. July 26, 2022); *see* *Hill v. City of N.Y.*, 45 F.3d 653, 661 (2d Cir. 1995) (holding that a prosecutor was absolutely immune from suit for "conspiring to present falsified evidence to ... a grand jury").

For these reasons, the Court finds no error in, and adopts, Magistrate Judge Stewart's recommendation that the claims against Defendant Charpentier be dismissed with prejudice.

### F. Section 1983

#### *1. State Action*

Magistrate Judge Stewart recommends dismissal of Plaintiff's claims against Defendants Reindeau, Farrell, Mcgahan and Applebe (hereinafter the "Defense Counsel Defendants"), who acted as counsel for Plaintiff during his criminal proceedings, because the Defense Counsel Defendants are not state actors. *See id.* at 6-7.[5] Plaintiff argues that the Defense Counsel Defendants should not be dismissed because "[h]ad it not been for a proceeding brought by the 'People of the State of New York' [he] never would have come across these individuals[, t]hey are licensed to 'practice' by the State Bar Association[, t]hey draw their funds and fees from State backed support[, and t]hey are regulated by the State 'Rules of Professional Conduct.' " Dkt. No. 14 at 53. Plaintiff argues that, for these reasons, "how anyone can come up with [']Public Defenders are not state actors['] is far reaching for a man of reasonable understanding." Dkt. No. 14 at 53 (quotation marks omitted).

5 Magistrate Judge Stewart also recommends dismissal of the fourteenth cause of action, brought against the Defense Counsel Defendants, because 42 U.S.C. § 1983 is not the appropriate vehicle to bring a claim for ineffective assistance of counsel. *See* Dkt. No. 11 at 7. The Court agrees. *See* *Welch v. Schenectady Cnty.*, No. 1:22-CV-9, 2022 WL 3904113, *2 (N.D.N.Y. Aug. 10, 2022), *report and recommendation adopted*, 2022 WL 3908798 (N.D.N.Y. Aug. 30, 2022) ("In addition, a section 1983 action 'is not the appropriate vehicle to raise a claim of ineffective assistance of counsel' ") (quotation omitted).

Courts routinely dismiss claims against public defenders and public defenders' offices because they are not state actors or persons under Section 1983. *See* *Tapp v. Champagne*, 164 Fed. Appx. 106, 108 (2d Cir. 2006) ("A 'public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding' ") (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981)); *Shorter v. Rice*, No. 12-CV-0111, 2012 WL 1340088, *4 (E.D.N.Y. Apr. 10, 2012) ("[I]t is axiomatic that neither public defenders, such as Legal Aid Attorneys, nor court-appointed counsel, nor private attorneys, act under the color of state law merely by virtue of their position").

Plaintiff alleges that that the Defense Counsel Defendants violated the Sixth Amendment because they failed to provide him with adequate representation and violated the Fourteenth Amendment by conspiring to present fabricated evidence to the grand jury in his criminal proceeding. *See* Dkt. No. 1 at 12-15, 22. The Defense Counsel Defendants are not

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

state actors and, thus, the Court adopts Magistrate Judge Stewart's recommendation that the claims against these defendants, brought pursuant to Section 1983, be dismissed with prejudice. [6]

6 Specifically, the fourteenth cause of action is dismissed, as it alleges Sixth Amendment violations by the Defense Counsel Defendants. *See* Dkt. No. 1 at 22. Additionally, Defendants Charpentier, Reindeau, Farrell, Mcgahan and Applebe are the only defendants named in the fourth and fifth causes of action. *See* Dkt. No. 1 at 12-15. Because the claims against all of these attorney defendants are dismissed, as Defendant Charpentier is entitled to prosecutorial immunity and the Defense Counsel Defendants are not state actors, the fourth and fifth causes of action, which allege conspiracy to present false evidence to the grand jury, are also dismissed.

***2. False Arrest and False Imprisonment***

***5** Plaintiff's first and second causes of action allege that Defendants Shattick, Yerdon, Tate, Merria, Burdette, Anderson, and Bigwarfe violated his Fourth Amendment right to be free from unreasonable search and seizure, and that such defendants failed to intervene in the Fourth Amendment violations. *See* Dkt. No. 1 at 7-10. Magistrate Judge Stewart recommends that Plaintiff's first and second causes of action survive initial review and should be permitted to proceed. *See* Dkt. No. 11 at 7-8. The parties do not object to this recommendation and the Court, finding no error, adopts Magistrate Judge Stewart's recommendation that the first and second causes of action survive initial review.

***3. Deliberate Indifference***

Plaintiff's third and sixteenth causes of action allege that Defendants Shattick, Yerdon, Tate, Merria, Burdette, Anderson, Bigwarfe, Harper, Amos, Mayo, Scott, Clancy, Kerrigan, and Nurse 1-100 were deliberately indifferent to his medical needs. *See* Dkt. No. 1 at 10-11, 22-23. Magistrate Judge Stewart recommends that Plaintiff's third and sixteenth causes of action survive initial review and should be permitted to proceed. *See* Dkt. No. 11 at 8. The parties do not object to this recommendation and the Court, finding no error, adopts it.

***4. Municipal Liability***

Plaintiff alleges, through what is labelled his sixth cause of action, that the Sheriff's Department and St. Lawrence C.C.F. are subject to municipal liability, pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *See* Dkt. No. 1 at 15. Magistrate Judge Stewart recommends that: (1) St. Lawrence C.C.F. be dismissed with prejudice, as the correctional facility is not a distinct entity from the County, and, thus, is not a proper party to a Section 1983 claim; and (2) because Plaintiff has not identified a purported policy, practice, or custom which caused his alleged constitutional violations, that the sixth cause of action be dismissed with leave to replead against St. Lawrence County. *See* Dkt. No. 11 at 9, n.5. Through his objections, Plaintiff seeks to amend his sixth cause of action. *See* Dkt. No. 14 at 1-14.

For the reasons previously discussed, Plaintiff cannot amend his complaint through his objections to the R&R. *See Lombardi*, 2017 WL 1102678, at *3. As for Magistrate Judge Stewart's recommendation that the sixth cause of action be dismissed with leave to replead as against St. Lawrence County, the Court reviews the recommendation *de novo* and adopts it as modified as follows.

To hold a municipality liable, a plaintiff “must show the following: ‘(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury.’ ” *Maddox v. City of Syracuse*, No. 5:14-CV-1068, 2017 WL 680439, *3 (N.D.N.Y. Feb. 21, 2017) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008)) (additional citation omitted). However, absent an independent constitutional violation, a municipality cannot be held liable under § 1983. *See Monell*, 436 U.S. at 694 (“A local government may not be sued under § 1983 ... [unless the] official policy [is] ... the moving force of the constitutional violation”); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (“Thus, our first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation”).

Federal courts apply state law to determine whether an entity has capacity to be sued. *See* Fed. R. Civ. P. 17(b). “Under New York law, a county is a municipal corporation capable of bringing suit and being sued.” *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (citing N.Y. Gen. Mun. Law § 2). However, a sheriff's department or a police department is an administrative arm of the municipal corporation and does not have a separate identity from the municipality. *See*

*id.*; *Long v. City of Orleans*, 540 F. Supp. 3d 344, 350 (W.D.N.Y. 2021). Because a sheriff's department "does not exist separate and apart from the municipality and does not have its own legal identity," it cannot sue or be sued. *Baker*, 42 F. Supp. 2d at 198; *see Jenkins v. Onondaga Cnty. Sheriff's Dep't*, No. 5:12-CV-855, 2012 WL 4491134, *2 (N.D.N.Y. June 28, 2012) ("[U]nder New York law, departments, like the Onondaga County Sheriff's Department, that are merely administrative arms of a municipality, do not have a legal identity separate from the municipality and may not sue or be sued"). For these same reasons, a county correctional facility cannot be sued under Section 1983. *See Miles v. Albany Corr. Facility*, No. 9:09-CV-1279, 2010 WL 3946956, *1 (N.D.N.Y. Sept. 16, 2010), *report and recommendation adopted*, 2010 WL 3940956 (N.D.N.Y. Oct. 6, 2010) (finding that "the Albany Correctional Facility cannot be sued under 42 U.S.C. § 1983"). Therefore, the causes of action brought against the Sheriff's Department and St. Lawrence C.C.F. are dismissed with prejudice.

***6** Furthermore, the Court agrees with Magistrate Judge Stewart that, in his complaint, Plaintiff fails to clearly identify an unconstitutional policy that would support a claim for municipal liability. *See* Dkt. No. 11 at 9; Dkt. No. 1. Now, in his objections, Plaintiff raises various conditions that he believes constitute unconstitutional policies, practices, or customs of St. Lawrence County. *See* Dkt. No. 14 at 8-14 (alleging unconstitutional use of certain restraints, unlawful administration of controlled substances to incarcerated individuals, deprivation of outdoor recreation for pre-trial detainees, "toxic gas" emanating from shower drains at the correctional facility, and arbitrary and extended periods of segregated confinement). Plaintiff argues that these alleged policies violate New York Correction Law §§ 500-c and 137, Article 1 § 6 and § 11 of the New York State Constitution, and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. *See id.* However, Plaintiff's new and re-hashed allegations do not present cognizable objections to the R&R. *See Ross v. Dempsey Unif. & Linen Supply*, No. 3:16-CV-1208, 2017 WL 1207832, *1 (N.D.N.Y. Mar. 31, 2017), *aff'd*, 739 Fed. Appx. 59 (2d Cir. 2018) (finding objections insufficient to alter report and recommendation because the "plaintiff simply states general legal principles, and repeats his allegations against the named defendants"). Accordingly, the Court adopts Magistrate Judge Stewart's recommendation that the sixth cause of action be dismissed without prejudice, that St. Lawrence C.C.F. and the Sheriff's Department be dismissed with prejudice, and that Plaintiff be granted leave to amend his municipal liability allegations as against St. Lawrence County. *See* Dkt. No. 11 at 9.

***5. Supervisory Liability***

The seventh cause of action in Plaintiff's complaint seeks to hold Defendants Brook, Bigwarfe, Anderson, Harper, and Amos liable because "holding and acting in their respective positions as supervisors[, they] were aware of each constitutional violation and chose not to act." Dkt. No. 1 at 16. Magistrate Judge Stewart recommends that the seventh cause of action be dismissed because these Defendants "cannot be held liable simply by virtue of their supervisory position ... [and] each is named as a Defendant with respect to their own involvement in individual events." Dkt. No. 11 at 10. Plaintiff objects to the dismissal of and "re-pleads and seeks reinstatement" of his seventh cause of action. Dkt. No. 14 at 15. After conducting its own *de novo* review of this section of the R&R, the Court agrees with Magistrate Judge Stewart.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983.' " *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). " 'To establish a violation of [Section] 1983 by a supervisor, as with everyone else, ... the plaintiff must establish a deliberate, intentional act on the part of the defendant to violate the plaintiff's legal rights.' " *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Porro v. Barnes*, 624 F.3d 1322, 1327-28 (10th Cir. 2010)). "[T]here is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

With this well-established legal principle in mind, the Court adopts Magistrate Judge Stewart's recommendation that Plaintiff's seventh cause of action, which alleges only that the named Defendants should be held liable by virtue of their positions as supervisors, should be dismissed with prejudice. Plaintiff may include allegations regarding any of the Defendant's *own individual violations* of his constitutional rights in his amended pleading.

**G. The ADA and RA**

Plaintiff alleges, in his eighth cause of action, that seventeen individual Defendants acted in violation of the ADA and

RA. *See* Dkt. No. 1 at 17-18. Magistrate Judge Stewart recommends that this cause of action "be dismissed with prejudice as to the individual Defendants, but that Plaintiff be permitted to replead those claims against a proper party." Dkt. No. 11 at 10-11. Plaintiff "seeks the Court's help in identifying the appropriate defendant for this claim." Dkt. No. 14 at 43. [7]

[7] Plaintiff also requests that the Court subpoena evidence from "the Global Tel Link messaging app" and recorded phone calls. Dkt. No. 14 at 41. Now is not the appropriate time to exercise the Court's subpoena powers. Plaintiff will have the opportunity to engage in the discovery process in due course.

***7** Neither the ADA nor the RA "provides for individual liability." *Dees v. Zurlo*, No. 1:24-CV-1, 2024 WL 2291701, *16 (N.D.N.Y. May 21, 2024) (quotation and quotation marks omitted). Indeed, " '[i]t is well-established that there is no individual liability under the ADA or the [RA], whether the individual is sued in their official or individual capacity.' " *Goe v. Zucker*, 43 F.4th 19, 35 (2d Cir. 2022) (quoting *Perros v. Cnty. of Nassau*, 238 F. Supp. 3d 395, 402 n.3 (E.D.N.Y. 2017)).

"Title II of the ADA prohibits a 'public entity' from discrimination against a 'qualified individual with a disability.' " *Pascual v. N.Y. State*, No. 2:24-CV-6723, 2024 WL 5046675, *5 (E.D.N.Y. Dec. 9, 2024) (quoting 42 U.S.C. § 12132). "A 'public entity' includes 'any State or local government.' " *Id.* (quoting 42 U.S.C. § 12131(1)(A)). Accordingly, counties have been found to be public entities capable of being sued under the ADA. *See id.* (finding Suffolk County to be a public entity as defined by the ADA).

For these reasons, the Court adopts Magistrate Judge Stewart's recommendation that the seventh cause of action be dismissed as against the individual Defendants and Plaintiff is granted leave to replead his ADA and RA claims as against a proper party.

### H. Sections 1985 and 1986

Plaintiff brings his ninth and tenth causes of action pursuant to 42 U.S.C. §§ 1985 and 1986, alleging that certain Defendants engaged in a conspiracy to deprive him of his constitutional rights. *See* Dkt. No. 1 at 19-21. Magistrate Judge Stewart recommends dismissal of the ninth and tenth causes of action, with leave to amend, because Plaintiff has failed to state a claim. *See* Dkt. No. 11 at 11. Specifically, Magistrate Judge Stewart recommends dismissal because Plaintiff does not allege that the conduct by Defendants was motivated by racial or other class-based animus, as required to state a claim under Section 1985 and, as a result, Plaintiff has also failed to state a claim pursuant to Section 1986 because such claim must be predicated on a valid Section 1985 claim. *See id.* Plaintiff asserts no specific objection this recommendation and merely states that his tenth cause of action "should not be dismissed" because he "needs attorney to assist him in prosecuting" his fourth (as well as his tenth) cause of action. Dkt. No. 14 at 39. Exercising its discretion to review this section of the R&R *de novo*, the Court adopts the recommendation that the ninth and tenth causes of action be dismissed with leave to amend.

To state a valid conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must show:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007) (citing *Britt v. Garcia,* 457 F.3d 264, 270 n.4 (2d Cir. 2006)). "Further, a plaintiff must allege ... that the conspiracy was motivated by some class-based animus." *L.K. v. Sewanhaka Cent. High Sch. Dist.*, 641 Fed. Appx. 56, 59 (2d Cir. 2016) (citing *Cine SK8, Inc.*, 507 F.3d at 791). And, because Section 1986 claims are predicated on a valid Section 1985 claim, courts evaluate these claims together. *See id.* (citing *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000)).

***8** There are no allegations in Plaintiff's complaint that Defendants' alleged conduct was motivated by some class-based animus. *See* Dkt. No. 14. Therefore, the Court adopts Magistrate Judge Stewarts recommendation that the ninth and tenth causes of action, brought pursuant to Sections 1985 and 1986, be dismissed with leave to amend. *See* Dkt. No. 11 at 11.

**I. State Law Claims**

Plaintiff asserts, against all Defendants, claims under New York law for negligent infliction of emotional distress, intentional infliction of emotional distress, and negligence—his eleventh, twelfth, and thirteenth causes of action. *See* Dkt. No. 1 at 21. Magistrate Judge Stewart recommends dismissal of these causes of action, with leave to replead, because Plaintiff has not made the proper showing, pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure. *See* Dkt. No. 11 at 12. Specifically, Magistrate Judge Stewart recommends dismissal because "the broad assertion that all [Defendants] are liable for these state law torts without any explanation of how each is alleged to have committed the torts is not permissible." *Id.* Plaintiff objects to the dismissal of his state law claims, requests the appointment of *pro bono* counsel, and seeks to amend his eleventh, twelfth, and thirteenth causes of action through his objections to the R&R. *See* Dkt. No. 14 at 46-53.

Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a clam for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). "The purpose of this Rule 'is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense.' " *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)) (other citations omitted).

Plaintiff has failed to show how each Defendant is liable for the state law claims alleged. *See* Dkt. No. 1 at 22. As Magistrate Judge Stewart notes, "[t]he various Defendants are accused of a variety of misconduct over a span of time elsewhere in the Complaint and the broad assertion that all are liable for these state law torts without any explanation of how each is alleged to have committed the torts is not permissible." Dkt. No. 11 at 12. For these reasons, the Court adopts the recommendation that the eleventh, twelfth, and thirteenth causes of action be dismissed with leave to replead. *See id.*

**J. Motion for Appointment of Counsel**

Magistrate Judge Stewart denied Plaintiff's motion for the appointment of counsel, with leave to renew at a later stage of this action. *See id.* at 12-14. Throughout Plaintiff's objections, he requests that the Court alter Magistrate Judge Stewart's denial of his motion and appoint him counsel. *See, e.g.*, Dkt. No. 14 at 39, 46.

"Unlike criminal defendants, IFP plaintiffs bringing civil actions have no constitutional right to the appointment of counsel." *Brown v. Utica Police Dep't*, No. 6:17-CV-1190, 2017 WL 5514518, *4 (N.D.N.Y. Nov. 16, 2017) (citing *Wali v. One Source Co.*, No. 07-7550, 2009 WL 3170110, *1 (S.D.N.Y. Sept. 30, 2009)). " 'Appointment' of counsel in a civil action involves the court requesting an attorney to represent an IFP party pro bono under 28 U.S.C. § 1915(a)(1)." *Id.* (citation omitted). In determining whether to make such a request for the indigent party, courts carefully consider a number of factors. *See id.* (citing *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994)).

***9** The Court agrees with Magistrate Judge Stewart's denial of Plaintiff's motion to appoint counsel, particularly in light of the early stage of this action. *See* Dkt. No. 11 at 12-14; *see also* *Gervasio v. Diaz*, No. 9:20-CV-0346, 2020 WL 3496423, *2 (N.D.N.Y. June 29, 2020) ("The Court is still not aware of any special reason why appointment of counsel at this early stage of the proceeding would be more likely to lead to a just determination of this litigation").

**K. Leave to Amend**

Finally, Magistrate Judge Stewart recommends dismissing, with prejudice, the claims against Defendants Storie, Charpentier, Reindeau, Farrell, Mcgahan, and St. Lawrence C.C.F., as well as Plaintiff's fourth, fifth, seventh, fourteenth, fifteenth, and seventeenth causes of action, and all Eighth Amendment claims. *See* Dkt. No. 11 at 14. However, Magistrate Judge Stewart recommends dismissing Plaintiff's sixth, eighth, ninth, tenth, eleventh, twelfth, and thirteenth causes of action with leave to amend. *See id.* The Court finds no error with this portion of the R&R.

In Plaintiff's objections, he specifically asks the Court to allow him leave to amend his complaint. *See* Dkt. No. 14 at 1, 58. It is true that "[w]hen a *pro se* complaint fails to state a cause of action, the court generally 'should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Robinson v. Hallett*, No. 5:19-CV-406, 2020 WL 1227142, *4 (N.D.N.Y. Mar. 13, 2020) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). However, courts routinely deny an opportunity to amend where a claim is barred on immunity grounds because amendment would be futile. *See* *Humphrey v. Ct. Clerk ex rel. U.S. Sup. Ct.*,

No. 5:11-CV-938, 2011 WL 7112904, *4 (N.D.N.Y. Aug. 12, 2011) ("Because the defendant would be entitled to absolute immunity, this court recommends dismissal with prejudice of plaintiff's action"). Similarly, where an entity is not a person acting under the color of law, a Section 1983 claim cannot be stated. *Guillory v. Bishop Nursing Home*, No. 5:21-CV-410, 2021 WL 2431259, *3 (N.D.N.Y. June 15, 2021) ("Because Plaintiff failed to plausibly allege that the named Defendants acted under color of state law, Magistrate Judge Baxter correctly determined that the complaint fails to state any claims for relief under Section 1983 .... Moreover, Magistrate Judge Baxter correctly determined that leave to re-plead should be denied").

As such, the Court agrees with Magistrate Judge Stewart that the claims against Defendants Storie, Charpentier, Reindeau, Farrell, Mcgahan, and St. Lawrence C.C.F., along with Plaintiff's fourth, fifth, seventh, fourteenth, fifteenth, and seventeenth causes of action, and all Eighth Amendment claims, should be dismissed with prejudice and without leave to amend. *See* Dkt. No. 11 at 14. Additionally, the Court modifies the R&R, dismissing the claims against Defendant Sheriff's Department, with prejudice and without leave to amend, for the reasons previously stated. The Court also agrees that Plaintiff should have the opportunity to amend his sixth, eighth, ninth, tenth, eleventh, twelfth, and thirteenth causes of action because it is possible that Plaintiff could cure deficiencies in his pleading. *See id.*

If Plaintiff decides to amend his complaint, he must clearly set forth the facts that give rise to the claims, including, when possible, the dates, times, and places of the alleged underlying acts, as well as each individual who committed each alleged wrongful act. The revised pleading should allege facts demonstrating the personal involvement of any named Defendant. *See Wright*, 21 F.3d at 501. Finally, Plaintiff is informed that any amended complaint will replace the existing complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Jeanty v. Sciortino*, 669 F. Supp. 3d 96, 118-19 (N.D.N.Y. 2023).

## IV. CONCLUSION

***10** After carefully considering the R&R, the entire record in this matter, and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Stewart's R&R (Dkt. No. 11) is **ADOPTED as modified** herein; and the Court further

**ORDERS** that Plaintiff's amended complaint (Dkt. No. 1) is **DISMISSED without prejudice and with leave to amend** as to Plaintiff's sixth, eighth, ninth, tenth, eleventh, twelfth, and thirteenth causes of action; and the Court further

**ORDERS** that Plaintiff's claims against Defendants Storie, Charpentier, Reindeau, Farrell, Mcgahan, St. Lawrence C.C.F., and the Sheriff's Department are **DISMISSED with prejudice and without leave to amend**; and the Court further

**ORDERS** that Plaintiff's fourth, fifth, seventh, fourteenth, fifteenth, and seventeenth causes of action, as well as, all Eighth Amendment claims, are **DISMISSED with prejudice and without leave to amend**; and the Court further

**ORDERS** that Plaintiff's first, second, third, and sixteenth causes of action survive initial review and are permitted to proceed; and the Court further

**ORDERS** that Plaintiff shall file his amended complaint within **thirty (30) days** of the date of this Order; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2025 WL 542587

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 8:24-CV-00656** Lawrence v. St. Lawrence County Correctional Facility Sheriff's Office et al | — | N.D.N.Y. | May 14, 2024 | Docket |

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History (3)**

**Direct History (2)**

1. Lawrence v. Shattick
2024 WL 5454789 , N.D.N.Y. , Sep. 23, 2024

*Report and Recommendation Adopted as Modified by*

2. Lawrence v. Shattick
2025 WL 542587 , N.D.N.Y. , Feb. 19, 2025

**Related References (1)**

3. Lawrence v. Shattick
2026 WL 237648 , N.D.N.Y. , Jan. 29, 2026

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag
Declined to Extend by Broadwater v. County of Onondaga, N.D.N.Y., March 11, 2024

2020 WL 1904088
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Michael JOYNER, Plaintiff,
v.
COUNTY OF CAYUGA; Cayuga County Sheriff's Department; City of Auburn; Shawn I. Butler, Chief of Auburn Police Department, as an Individual and in his official capacity; Cayuga County District Attorney's Office; Jon E. Budelmann, as an Individual and in his capacity as District Attorney for Cayuga County; and Anthony Spinelli, as an Individual and in his capacity as an Auburn City Police Officer, Defendants.

5:20-CV-60 (MAD/TWD)
|
Signed 04/17/2020

**Attorneys and Law Firms**

OF COUNSEL: JARROD W. SMITH, ESQ., OFFICE OF JARROD W. SMITH, 11 South Main Street, P.O. Box 173, Jordan, New York 13080, Attorneys for Plaintiff.

OF COUNSEL: JEFFREY R. PARRY, ESQ., OFFICE OF JEFFREY R. PARRY, 7030 East Genesee Street, Fayetteville, New York 13066, Attorneys for Plaintiff.

OF COUNSEL: FRANK W. MILLER, ESQ., GIANCARLO FACCIPONTE, ESQ., OFFICE OF FRANK W. MILLER, 6575 Kirkville Road, East Syracuse, New York 13057, Attorneys for Defendants.

## MEMORANDUM-DECISION AND ORDER

Mae A. D'Agostino, U.S. District Judge:

## I. INTRODUCTION

***1** On or about February 18, 2020, Plaintiff filed a complaint against Defendants City of Auburn, Shawn L. Butler, County of Cayuga, Cayuga County District Attorney's Office, Jon E. Budelmann, and Anthony Spinelli, asserting eight claims pursuant to 42 U.S.C. §§ 1983 and 1988, and state law. *See* Dkt. No. 5. Specifically, Plaintiff's complaint alleges the following causes of action: (1) false arrest under the Fourth and Fourteenth Amendments; (2) malicious prosecution under the Fourth and Fourteenth Amendments; (3) negligent failure to train or supervise; (4) state law false arrest; (5) state law false imprisonment; (6) intentional and negligent infliction of emotional distress under New York State law; (7) negligence; and (8) deliberate indifference to medical care under the Eighth Amendment. *See* Dkt. No. 5 at ¶¶ 40-114. Currently before the Court is Defendants' motion to dismiss the complaint in its entirety. *See* Dkt. No. 9.

## II. BACKGROUND

According to the complaint, on August 10, 2018, Plaintiff was the passenger in a vehicle that was driven by 140 Wall Street, allegedly in violation of an order of protection for Linda Fitzsimmons and Lee Joyner, who both reside at that address. *See* Dkt. No. 5 at ¶¶ 24-25. Plaintiff resides at 145 Wall Street, several houses down from 140 Wall Street, on the opposite side of the street. *See id.* at ¶ 25. Plaintiff was not the driver of the vehicle and had no control over how the driver was delivering him to his home. *See id.*

On August 13, 2018, Plaintiff was arraigned on two felony complaints charging him with two counts of Criminal Contempt in the First Degree based on the alleged violation of the order of protection. *See id.* at ¶ 22. At the conclusion of his arraignment, Plaintiff was remanded to the Cayuga County Jail. *See id.* Plaintiff claims that "Defendant police officer lacked the requisite requirement of having probable cause to arrest the Plaintiff; and did falsely arrest and imprison the Plaintiff." *Id.* at ¶ 23.

On October 4, 2018, Defendant Jon E. Budelmann, in his capacity as Cayuga County District Attorney, presented Plaintiff's charges to a grand jury, which "No Billed" the case. *See id.* at ¶ 26. At this point, Plaintiff was released from custody. *See id.*

During the fifty-three days during which Plaintiff "was being illegally imprisoned," he slipped and fell at the Cayuga County Jail. *See id.* at ¶ 31. According to Plaintiff, on August 31, 2018, a water pipe burst at the Cayuga County Jail near Plaintiff's cell while he was already locked in for the night and sleeping. *See id.* at ¶ 32. Plaintiff was woken by a bursting water pipe that was turned off by a Cayuga County

Correctional officer. *See id.* at ¶ 33. "The first burst of the water pipe [occurred] when the Cayuga County Correctional officer shut the water off" between "12:00 midnight and 2:00 a.m." *Id.* at ¶ 34. "Plaintiff was woken by a bursting water pipe; and observed and heard that the correctional officer was going to turn off the water and clean up the water spill. At that time, there was no water in Plaintiff's cell." *Id.*

***2** Unbeknownst to Plaintiff, water from the burst pipe went underneath his locked cell door "and flooded his room while he was in bed and asleep." *Id.* at ¶ 35. "At around 6:30 am-7:00 am, Plaintiff got out of his bed to use the toilet in his cell. Plaintiff slipped and fell on the wet floor of his cell. The water on the floor was all near the toilet in his cell. There was a huge puddle of water between Plaintiff's bunk and the toilet in his cell." *Id.* at ¶ 36. Plaintiff claims that he slipped and fell, hitting his head and neck on his bunk, and his lower back on the floor, causing severe injuries. *See id.* at ¶ 37. At the time that Plaintiff had fallen and injured himself, a second water leak had occurred in the pod in which he was being held. *See id.* at ¶ 38. Plaintiff claims that, as a result of the fall, he suffered a herniated disc in his neck and a lower lumbar strain. *See id.* at ¶ 39. Plaintiff also claims that he suffers from numbing of his toes and finger tips. *See id.*

## III. DISCUSSION

### A. Standard of Review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." ' " *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

### B. Documents Considered in Deciding Motion to Dismiss

In their reply to the motion to dismiss, Defendants submitted several documents in further support of their motion. *See* Dkt. No. 16-1. These documents include (1) the August 10, 2018 criminal complaint charging Plaintiff with Criminal Contempt in the First Degree, (2) the order of protection that Plaintiff allegedly violated, (3) the affidavit of Linda Fitzsimmons that formed the basis for Defendant's underlying criminal charge, and (4) the incident narrative report of Defendant Spinelli dated August 15, 2018 relating to the criminal complaint filed against Plaintiff. *See id.* at 1-6.

***3** In deciding a motion to dismiss for failure to state a claim, the court considers the complaint, materials incorporated into the complaint by reference, materials integral to the complaint, and facts that are capable of judicial notice. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

In the present matter, the Court finds that these documents are not properly considered at the motion to dismiss stage. The Court acknowledges that there are cases in which courts have considered similar police records at the pleading stage. *See Betts v. Shearman*, No. 12-cv-3195, 2013 WL 311124, *3 (S.D.N.Y. Jan. 24, 2013) (considering incident report and accusatory instrument that "provide[d] crucial details" about the plaintiff's prosecution), aff'd *on qualified immunity*

*grounds*, 751 F.3d 78 (2d Cir. 2014); *cf.* *Obilo v. City Univ. of City of N.Y.*, No. 01-cv-5118, 2003 WL 1809471, *4 (E.D.N.Y. Apr. 7, 2003) (considering incident report and police complaint that the plaintiff had conceded were "implicitly" incorporated into his conspiracy allegations). The better view, however, adopted by a majority of courts in our Circuit, is that these kinds of police records are not "integral" to a false arrest complaint. *See* *Bejaoui v. City of New York*, No. 13-CV-5667, 2015 WL 1529633, *4–5 (E.D.N.Y. Mar. 31, 2015) (noting disagreement and declining to consider extrinsic police reports); *Alvarez v. Cty. of Orange*, 95 F. Supp. 3d 385, 394-95 (S.D.N.Y. 2015) (collecting cases). A document is not "integral" simply because its contents are highly relevant to a plaintiff's allegations, but only when it is clear that the plaintiff relied on the document in preparing his complaint. *See* *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156-57 (2d Cir. 2006); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Most typically, "the incorporated document is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason ... was not attached to the complaint." *Global Network Commc'ns*, 458 F.3d at 157. "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

Here, there is "no indication in the record that plaintiff relied on these documents in drafting the complaint." *Allyn v. Rockland Cty.*, No. 12-cv-5022, 2013 WL 4038602, *4 (S.D.N.Y. July 30, 2013), *affirmed*, 646 Fed. Appx. 60 (2d Cir. 2016). To the contrary, Plaintiff relies on his own perceptions and recollections, while only making passing reference to the criminal complaint and order of protection. Furthermore, it is not beyond dispute that the police report and narrative are a truthful description of the police officer's basis to arrest Plaintiff. To accept the truth of the documents offered by Defendants at this stage would amount to a premature determination that the arresting officers and the alleged victim are more credible than Plaintiff. To make such a determination at this stage would not be appropriate, and therefore the Court will not consider the facts adduced in these documents. The Court will, however, take judicial notice of the existence of the criminal complaint, supporting affidavit, and order of protection. *See* *Williams v. City of New York*, No. 14-cv-5123, 2015 WL 4461716, *1 (S.D.N.Y. July 21, 2015) (noting that the court "may take judicial notice of the procedural history of plaintiff's criminal case, but not of the truth of the arresting officers' version of events"); *see also* *Ribaudo v. Desimone*, No. 3:18-cv-1190, 2019 WL 1906269, *4 (M.D. Pa. Apr. 5, 2019) (holding that "even if judicial notice is taken of these documents, 'a court may take notice of such documents only to establish their existence and legal effect, or to determine what statements they contained ... not for the truth of the matters asserted' ") (quoting *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 223 (N.D.N.Y. 2014)) (other citation omitted).

### C. *Monell* and Supervisory Liability

***4** "Under the standards of *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), a municipality can be held liable under [42 U.S.C. § 1983] if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012). Liability under Section 1983 "is imposed on the municipality [only] when it has promulgated a custom or policy that violates federal law and, pursuant to that policy, a municipal actor has tortiously injured the plaintiff." *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." *Jones*, 691 F.3d at 80. Thus, for a municipality to be held liable under Section 1983 for the unconstitutional actions of its employees, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks omitted).

"Supervisory liability is a concept distinct from municipal liability, and is 'imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates.' " *Kucera v. Tkac*, No. 5:12-cv-264, 2013 WL 1414441, *4 (D. Vt. Apr. 8, 2013) (quoting *Odom v. Matteo*, 772 F. Supp. 2d 377, 403 (D. Conn. 2011)). Prior to the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Second Circuit required a plaintiff to allege one of the following categories for supervisory liability under § 1983:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or

> custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [persons] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

In order to succeed on his *Monell* and supervisory liability claims, a plaintiff must first "identify obvious and severe deficiencies" in the policies of the municipal and supervisory defendants and "show a causal relationship" between those deficiencies and his alleged deprivations. *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007). However, to the extent that a plaintiff premises his claims on a failure to train or supervise, such failure "may constitute an official policy or custom [only] if the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact." *Wray*, 490 F.3d at 195. Similarly, a supervisory defendant is liable only for the creation or continuation of policy that leads to a pattern of unconstitutional conduct or if he demonstrated deliberate indifference in failing to act on information that a pattern of unconstitutional conduct was occurring. *See Colon*, 58 F.3d at 873.

"To establish deliberate indifference a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." *Jones*, 691 F.3d at 81.

> A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train [or supervise because] [w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

***5** *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)). "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* at 61 (citation omitted). [1]

1 As discussed in more detail below, Plaintiff's complaint fails to set forth any facts sufficient to find either supervisory or municipal liability against any of the named Defendants for any of the listed causes of action.

### D. Cayuga County District Attorney's Office and Auburn Police Department

Plaintiff names the Cayuga County District Attorney's Office as a named Defendant in this case. The caselaw is clear, however, that a district attorney's office is not an entity subject to suit under 42 U.S.C. § 1983. *See Michels v. Greenwood Lake Police Dep't*, 387 F. Supp. 2d 361, 367 (S.D.N.Y. 2005) (citing cases); *Griffith v. Sadri*, No. 07-CV-4824, 2009 WL 2524961, *8 (E.D.N.Y. Aug. 14, 2009). Similarly, Plaintiff has listed the Auburn Police Department as an entity responsible for several of the alleged constitutional violations. *See* Dkt. No. 5 at ¶¶ 51-82. As with the District Attorney's Office, the Auburn Police Department (which is not listed as a Defendant in the caption of the complaint), the Court finds that it must be dismissed because a police department is not an independent, suable entity separate from the municipality in which the police department is located. *See Jenkins v. City of New York*, 478 F.3d 76, 93 (2d Cir. 2007) (citation omitted); *Krug v. City of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (citing cases); *Koulkina v. City of New York*, 559 F. Supp. 2d 300, 315 (S.D.N.Y. 2008) (citing cases).

Accordingly, the Court dismisses Plaintiff's claims against the Cayuga County District Attorney's Office and the Auburn Police Department.

### E. False Arrest

In their motion to dismiss, Defendants contend that, based on Plaintiff's own allegations, probable cause was present

to believe that he committed the offense for which he was arrested. *See* Dkt. No. 9-1 at 14-16. Defendants claim that Plaintiff "admits that he was charged with violating duly issued orders of protection issued for Linda Fitzsimmons and Lee Joyner, who reside at 140 Wall Street in the City of Auburn. *See id.* at 15 (citing Dkt. No. 5 at ¶ 24). Defendants further claim that Plaintiff "admits he was 'driven by' 140 Wall Street on August 10, 2018." *Id.* (citing Dkt. No. 5 at ¶ 25). Defendants contend that the fact that Plaintiff claims that he was not driving the vehicle "has no bearing on whether the order of protection was reasonably deemed violated by police authorities, and Plaintiff is careful not to deny that he was in fact at 140 Wall Street on the date in question, which is *a per se* violation of the order." *Id.* In response, Plaintiff argues that since he "was arrested for traveling on a public road in route to his own home and in violation of no Order, law or ordinance and, as it cannot be denied that he was 'no billed' by the Grand Jury, it would seem plausible to this writer that any court would agree to the plausibility of Plaintiff's claims." Dkt. No. 10 at 16.

***6** In assessing Fourth Amendment claims of false arrest brought under Section 1983, courts generally look to the law of the state in which the arrest is alleged to have occurred. *See* *Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007) (citation omitted). To prevail on a false arrest claim under New York law, a plaintiff has to prove the following: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (alteration and internal quotation marks omitted) (quoting *Broughton v. State*, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975)); *see also* *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (outlining the elements of false arrest claims). "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest.' " *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)); *see also* *Ackerson*, 702 F.3d at 19-20 (citing *Weyant*, 101 F.3d at 852). "A police officer has probable cause for an arrest when he has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime[.]' " *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (same). Such knowledge or information can be based on information provided by an eyewitness, unless the circumstances would raise a doubt as to the eyewitness' veracity. *See* *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (citing *Singer*, 63 F.3d at 119). The question is whether the facts known to the arresting officer, at the time of the arrest, objectively provided probable cause to support the arrest. *See* *Gonzalez*, 728 F.3d at 155.

In the present matter, the Court finds that Defendants' motion to dismiss Plaintiff's false arrest claim must be denied as to Defendant Spinelli. The complaint sufficiently alleges, albeit barely, that Defendant Spinelli lacked probable cause to arrest Plaintiff for the crime of Criminal in the First Degree. Indeed, it is unclear from the complaint whether Plaintiff's conduct was, in fact, in violation of the order of protection. [2]

2 Although the Court is permitting this claim against Defendant Spinelli to survive, the Court has serious doubts about whether the claim would survive a properly supported motion for summary judgment. If the Court were to consider the contents of the criminal complaint, supporting affidavit, and Defendant Spinelli's narrative, the claim would undoubtedly be dismissed. This, however, highlights why the Court believes that it is inappropriate to rely on the contents of these documents at this stage. Without the benefit of discovery, Plaintiff has been unable to question the veracity of the statements contained in those documents. That being said, the criminal complaint and affidavits paint a much less sympathetic picture than the one set out in Plaintiff's complaint.

However, to the extent that Plaintiff attempts to assert a false arrest claim against any other named Defendant, the claim must be dismissed. Plaintiff's complaint is devoid of any facts that would permit the Court to find that any other Defendant was personally involved in the alleged false arrest. Aside from conclusory allegations merely reciting the underlying law, Plaintiff fails to include any facts that plausibly allege the personal involvement of any municipal or supervisory Defendant. For example, Plaintiff alleges that "Defendant Butler, Defendant City and Defendant County have created and tolerated an atmosphere of lawlessness, and have developed and maintained long-standing, department-wide customs, law enforcement related policies, procedures, customs, practices, and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff and of the

public." Dkt. No. 78 at ¶ 78. While this allegation accurately reflects what is required to hold municipal and supervisory officials personally liable for the acts of other, the simple recitation of the relevant law is insufficient to withstand a motion to dismiss. Rather, Plaintiff was required to allege facts, specific to his case, demonstrating how these municipal and supervisory Defendants were personally involved in the alleged unconstitutional conduct, which he has failed to do. Simply put, the legal conclusions in Plaintiff's complaint, devoid of any supporting facts, fail to plausibly allege supervisory or municipal liability as to this claim.

***7** Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's false arrest claim as to Defendant Spinelli.

**F. Malicious Prosecution**

In their motion to dismiss, Defendants argue that Plaintiff's malicious prosecution must be dismissed because the complaint fails to set forth facts plausibly alleging that the prosecution was initiated without probable cause or that any named Defendant acted with the requisite malice. *See* Dkt. No. 9-1 at 16-17. In response, Plaintiff states as follows: "As the plaintiff was arrested for traveling on a public road in route to his own home and in violation of no Order, law or ordinance, as it cannot be denied that he was 'no billed' by the Grand Jury and as he spent 53 days in jail for no reason whatsoever, it would seem plausible to this writer that any court would agree to the plausibility of Plaintiff's claims." Dkt. No. 10 at 17 (citing *Swierkiezicz v. Sorema*, 534 U.S. 506 (2002)). Plaintiff brings his malicious prosecution claim against the City of Auburn, Auburn Police Department, Cayuga County, and Defendant Butler. *See* Dkt. No. 5 at ¶¶ 51-82. While Plaintiff may be confident in the viability of his claim, this Court finds that Plaintiff has failed to plausibly allege facts supporting a claim for malicious prosecution. [3]

3 Throughout his response, Plaintiff repeatedly states that "the Court is respectfully reminded that it may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See, e.g.*, Dkt. No. 10 at 17, 18 (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73). Further, Plaintiff repeatedly contends that he "has no duty at this stage to prove his case." *Id.* These basic tenets are not in dispute. What Plaintiff fails to appreciate, however, is that a complaint must be supported by facts specific to his case, not merely broad assertions of the relevant law poorly disguised as facts. For example, Plaintiff alleges that Defendants engaged in "extreme and outrageous conduct," but fails to explain how any of the conduct alleged could possibly be considered extreme and outrageous. Further, Plaintiff seems to be operating under the assumption that the Court is required to use its imagination to come up with a hypothetical set of facts that could have been pled that would render the claims plausible. *Iqbal* and *Twombly*, however, place no such burden on the Court. Rather, it is incumbent on the plaintiff to set forth the necessary facts specific to his or her case to render the asserted claims plausible.

To prevail on a Section 1983 claim for malicious prosecution, "a plaintiff must show a violation of his rights under the Fourth Amendment ... and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citations omitted). Under New York law, a plaintiff must plausibly allege four elements to support a malicious prosecution claim: " '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.' " *Id.* (quotation and other citations omitted); *see also Dufort v. City of New York*, 874 F.3d 338, 350 (2d Cir. 2017) (quotation omitted). Initiating a criminal proceeding against a person without probable cause, coupled with a deprivation of liberty, is a Fourth Amendment violation. *See Murphy v. Lynn*, 118 F.3d 938, 944-45 (2d Cir. 1997) (citation omitted).

***8** The Second Circuit has held that although "police officers do not generally "commence or continue" criminal proceedings against defendants, a claim for malicious prosecution can still be maintained against a police officer if the officer is found to 'play[ ] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.' " *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015) (quotations omitted). "This element might be satisfied by, for example, showing that an officer generated witness statements or was regularly in touch with the prosecutor regarding the case." *Id.* (citation omitted).

Recently, the New York Court of Appeals acknowledged that it has " 'never elaborated on how a plaintiff in a malicious prosecution case demonstrates that the defendant commenced or continued the underlying criminal proceeding.' " *Torres*

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

v. Jones, 26 N.Y.3d 742, 760-61 (2016) (quotation omitted). "But, by suggesting that a defendant other than a public prosecutor may be liable for supplying false information to the prosecutor in substantial furtherance of a criminal action against the plaintiff, we have implicitly recognized that such conduct may, depending on the circumstances, constitute the commencement or continuation of the prosecution." *Id.* at 761 (citations omitted); *see also* *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983) (noting that proof establishing "that the police witnesses" have falsified evidence may create liability for malicious prosecution); *Hopkinson v. Lehigh Val. R.R. Co.*, 249 N.Y. 296, 300-01 (1928) (noting that the falsification of evidence and presentation of that evidence to the prosecutor can constitute commencement of a prosecution).

***1. Initiation of Criminal Prosecution***

In the present matter, the Court finds that Plaintiff's malicious prosecution claim must be dismissed. Initially, the Court finds that Plaintiff has failed to adequately allege that any named Defendant initiated that the prosecution against him. While Defendant Spinelli filed the criminal complaint against him, nothing in the complaint suggests his participation in Plaintiff's prosecution beyond that. Nearly all cases in which law enforcement officers were found to have initiated or continued a prosecution for purposes of a malicious prosecution claim involve officers who provided knowingly false and/or fabricated evidence to unwitting prosecutors. *See, e.g.*, *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997); *Ramos v. City of New York*, 285 A.D.2d 284, 299 (1st Dep't 2001). There is a rebuttable presumption that criminal proceedings are initiated by prosecutors, not arresting officers. *See* *Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 228 (S.D.N.Y. 2006) (citation omitted). "[I]n the absence of evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment," a claim of malicious prosecution against the officer must fail. *See* *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999) (citations omitted).

Plaintiff's complaint is devoid of any allegations that Defendant Spinelli engaged in any of the conduct identified above that would permit the Court to find that Plaintiff plausibly alleged that any party other than the District Attorney initiated the prosecution against him. As such, the Court finds that Plaintiff's malicious prosecution claim is subject to dismissal.

***2. Malice***

Plaintiff's complaint is also devoid of any facts supporting an inference that the prosecution was instituted with malice. As Defendants correctly note, Plaintiff misconstrues the standard on a motion to dismiss. While Plaintiff is not required to "prove" that Defendants acted in a malicious manner to sustain his claim, he is certainly required to plead enough facts that would make such a conclusion plausible. Plaintiff's complaint fails to plead any facts that would support the inference that any named Defendant (or their employees) acted with the requisite malice to support a malicious prosecution claim. Rather, the complaint simply alleges that he was subjected to normal processes of law. The number of days that Plaintiff spent in jail is irrelevant to this consideration, as is the fact that he was "no billed" by the Grand Jury. Plaintiff does not allege that he had previous interactions with any of the named Defendants, or that his interactions with them during his arrest and subsequent prosecution would indicate a malicious intent. Finally, as to the supervisory and municipal Defendants, Plaintiff has failed to put forth any facts in support of this claim. Rather, the complaint contains nothing but legal conclusions without providing any basis for the Court to conclude that Plaintiff has plausibly alleged a malicious prosecution claim against these Defendants.

***9** Accordingly, the Court finds that Plaintiff's malicious prosecution claim is subject to dismissal on this alternative ground.

***3. Prosecutorial Immunity***

Prosecutors sued under 42 U.S.C. § 1983 enjoy absolute immunity " 'from claims for damages arising out of prosecutorial duties that are "intimately associated with the judicial phase of the criminal process." ' " *Okongwu v. County of Erie*, No. 14CV832, 2017 WL 2686454, *3 (W.D.N.Y. June 22, 2017) (quoting Doe *v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976))). The prosecutor enjoys this absolute immunity because he or she is acting in a quasi-judicial capacity. *See* *Okongwu v. County of Erie*, No. 14CV832, 2018 WL 1383233, *3 (W.D.N.Y. Mar. 19, 2018). The function performed by the prosecutor defines the scope of this immunity. *See* *Imbler*, 424 U.S. at 430; *Warney*, 587 F.3d at 121. Acts of advocacy before a court, or preparation to advocate, are absolutely immune, *Imbler*, 424 U.S. at 430-31; *see also* *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993), while administrative duties or investigatory functions are not so immune, *Imbler*, 424 U.S. at 431 n.33; *Buckley*, 509 U.S. at 273; *Warney*, 587 F.3d at 121. "This protection encompasses

'all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation.' " *Peters*, 848 F. Supp. 2d at 385 (quoting *Barrett v. United States*, 798 F.2d 565, 571-72 (2d Cir. 1986)). As noted by the Second Circuit, "thus, to establish [absolute] immunity, the 'ultimate question' is 'whether the prosecutors have carried their burden of establishing that they were functioning as "advocates" when they engaged in the challenged conduct.' " *Warney*, 587 F.3d at 121 (quoting *Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996)).

Absolute immunity extends from the initiation of a prosecution and presenting a case at trial, *Boria v. Hicks*, No. 5:17-CV-00486, 2017 WL 2983304, *4 (N.D.N.Y. June 14, 2017), through the decision to end it, *see* Okongwu, 2017 WL 2686454, at *4, as well as post-conviction defense of proceedings and the decision whether to vacate a conviction, *Warney*, 587 F.3d at 123; *Peters*, 848 F. Supp. 2d at 387. Absolute immunity applies in the preparation for the initiation of judicial proceedings, but not to the investigative or administrative duties of a prosecutor. *See Warney*, 587 F.3d at 122. In *Peters*, the court listed activities that are investigative or administrative that do not deserve absolute immunity, such as orchestrating a sting operation, authorizing wiretaps, coercing confidential informant to consent to a wire, releasing information to the media, assisting in the execution of a warrant, or supervising and interacting with law enforcement agents to acquire evidence. *See Peters*, 848 F. Supp. 2d at 386 (citing cases).

In the present matter, the Court finds that Defendant Budelmann, as Cayuga County District Attorney is entitled to absolute prosecutorial immunity. In the complaint, Plaintiff alleges that "[o]n October 4, 2018, Defendant district attorney presented Plaintiff's criminal charges to the Grand Jury of Cayuga County where the grand jury 'No Billed' the case; and Plaintiff was released from his illegal confinement at the Cayuga County Jail." Dkt. No. 5 at ¶¶ 26, 91. Further, Plaintiff claims that "Defendant district attorney knew at the time of Plaintiff's case being presented to the Grand Jury of Cayuga County that he would not prevail due to the lack of probable cause." *Id.* at ¶ 29. These allegations make clear that Defendant Budelmann has been sued relating to his role in presenting the case to the grand jury; conduct for which he is entitled to absolute prosecutorial immunity. *See Hill v. City of New York*, 45 F.3d 653, 661-62 (2d Cir. 1995) (holding that "that prosecutors are immune from § 1983 liability for their conduct before a grand jury") (citations omitted); *Bernard v. County of Suffolk*, 356 F.3d 495, 505 (2d Cir. 2004) (citations omitted). Accordingly, Plaintiff's claim of malicious prosecution against Defendant Budelmann is subject to dismissal on this alternative ground.

***10** Finally, to the extent that Plaintiff seeks to impute the conduct of Defendant Budelmann to Cayuga County, the claim must necessarily be dismissed. The Second Circuit Court of Appeals has unequivocally held that "prosecutorial acts may not fairly be said to represent official policy of the County," because "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county." *Baez v. Hennessy*, 853 F.2d 73 (2d Cir. 1988) (internal quotation omitted); *see also Doe v. Smith*, 704 F. Supp. 1177, 1184 (S.D.N.Y. 1988). Since Defendant Budelmann was acting on behalf of the State of New York, and not Cayuga County, any alleged misconduct on Defendant Budelmann's part cannot be imputed to Cayuga County.

### G. Negligent/Intentional Infliction of Emotional Distress

In his sixth cause of action, Plaintiff alleges claims of negligent and intentional infliction of emotional distress against Defendants Butler, Spinelli, and Budelmann. *See* Dkt. No. 5 at ¶¶ 96-98. Defendants contend these claims fail as a matter of law. *See* Dkt. No. 9-1 at 19-20.

As to the claim of negligent infliction of emotional distress, it is well settled that a " 'plaintiff seeking damages for an injury resulting from a wrongful arrest and detention may not recover under broad general principles of negligence ... but must proceed by way of the traditional remedies of false arrest and imprisonment.' " *Greenaway v. Cty. of Nassau*, 97 F. Supp. 3d 225, 239 (E.D.N.Y. 2015) (quoting *Secard v. Dep't of Soc. Servs. of Cnty. of Nassau*, 204 A.D.2d 445, 612 N.Y.S. 2d 167, 168 (2d Dep't 1994)). This is precisely what Plaintiff is attempting to do here. Tacking on a claim for negligent infliction of emotional distress without any other facts or assertions is insufficient under the relevant law. Moreover, even if this claim could be considered independent of Plaintiff's false arrest claim, it is still subject to dismissal because Plaintiff has not alleged any facts demonstrating that Defendants breached a duty owed to Plaintiff. As such, the Court grants Defendants' motion to dismiss as to Plaintiff's claim of negligent infliction of emotional distress.

As to the intentional infliction of emotional distress claim, it too must be dismissed. "Intentional infliction of emotional distress has four elements: '(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.' " *Greenaway*, 97 F. Supp. 3d at 239-40 (quoting *Howell v. N.Y. Post Co., Inc.*, 81 N.Y.2d 115, 596 N.Y.S. 2d 350, 612 N.E. 2d 699, 702 (1993)). "The 'extreme and outrageous conduct' must 'go beyond all possible bounds of decency' and be 'atrocious, and utterly intolerable in a civilized community.' " *Id.* (quotation and other citation omitted).

Here, Plaintiff claims that Defendants Budelmann, Spinelli, and Butler engaged in "extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to Plaintiff." Dkt. No. 5 at ¶ 97. Notably absent from the complaint is any explanation what this "extreme and outrageous conduct" was. " 'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 302 (1983) (quotation omitted). The threadbare facts alleged by Plaintiff, which include the fact that he was arrested and eventually released after the grand jury refused to indict, fall far short of this strict standard.

***11** Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's claims for negligent and intentional infliction of emotional distress.

### H. Negligence

In his seventh cause of action, Plaintiff asserts a claim for negligence. *See* Dkt. No. 5 at ¶¶ 100-04. In this claim, Plaintiff argues that his arrest, Defendants' failure to "follow the criminal law of the State of New York," and Plaintiff's fifty-three days of incarceration, were the product of Defendants' negligence. *See id.*

"To prevail on a claim for negligence under New York law, a plaintiff must establish '(1) the existence of a duty on the defendant's part as to the plaintiff; (2) a breach of that duty; and (3) resultant injury to the plaintiff.' " *Frederique v. County of Nassau*, 168 F. Supp. 3d 455, 485 (E.D.N.Y. 2016) (quotation omitted). "However, '[u]nder New York law, harm predicated on an intentional act may not give rise to a claim of negligence.' " *Id.* (quotation and other citation omitted). Moreover, it is well settled that, "[u]nder New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citing *Boose v. City of Rochester*, 71 A.D.2d 59, 421 N.Y.S.2d 740, 743 (4th Dept. 1979)) (other citation omitted).

In the present matter, the Court finds that Plaintiff's negligence claim must be dismissed as it is simply redundant of Plaintiff's claims of false arrest, false imprisonment, and malicious prosecution. Accordingly, the Court grants Defendants' motion to dismiss as to this claim.

### I. Deliberate Indifference to Serious Medical Needs

In his eighth cause of action, Plaintiff claims that "Defendant Medical Staff and Defendant Cayuga County Sheriff's Department" were deliberately indifferent to his medical care and treatment after he was injured when a water pipe broke outside his cell on August 31, 2018. *See* Dkt. No. 5 at ¶¶ 105-14.

A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (citations omitted). A pretrial detainee's claims are evaluated under the Due Process Clause because, " '[p]retrial detainees have not been convicted of a crime and thus 'may not be punished in any manner — neither cruelly and unusually nor otherwise.' " *Id.* (quotations omitted).

"A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29 (citation omitted). "This means that a pretrial detainee must satisfy two prongs to prove a claim, an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong' — perhaps better classified as a '*mens rea* prong' or 'mental element prong' — showing that the officer acted with at least deliberate indifference to the challenged conditions." *Id.* "The reason that the term 'subjective prong' might be a misleading description is that, as discussed below, the Supreme Court has instructed that 'deliberate indifference' roughly means 'recklessness,' but 'recklessness' can be defined subjectively (what a person actually knew, and disregarded), or objectively (what a reasonable person knew, or should have known)." *Id.* (citing

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

*Farmer v. Brennan*, 511 U.S. 825, 836-37, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)).

***12** Under both the Eighth and Fourteenth Amendments, to establish an objective deprivation, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health," which includes the risk of serious damage to "physical and mental soundness." *Id.* at 30 (citations omitted). "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.' " *Id.* (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981))). For example, the Second Circuit has " 'held that prisoners may not be deprived of their basic human needs — *e.g.*, food, clothing, shelter, medical care, and reasonable safety — and they may not be exposed to conditions that pose an unreasonable risk of serious damage to [their] future health.' " *Id.* (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)).

" '[C]onditions of confinement may be aggregated to rise to the level of a constitutional violation, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.' " *Darnell*, 849 F.3d at 30 (quotations omitted). "Unsanitary conditions, especially when coupled with other mutually enforcing conditions, such as poor ventilation and lack of hygienic items (in particular, toilet paper), can rise to the level of an objective deprivation." *Id.* (citations omitted).

The second element of a conditions of confinement claim brought under the Due Process Clause of the Fourteenth Amendment is the defendant's "deliberate indifference" to any objectively serious condition of confinement. *See Darnell*, 849 F.3d at 32. Courts have traditionally referred to this second element as the "subjective prong." "But 'deliberate indifference,' which is roughly synonymous with 'recklessness,' can be defined either 'subjectively' in a criminal sense, or 'objectively' in a civil sense." *Id.* As such, the "subjective prong" might better be described as the "*mens rea* prong" or "mental element prong." *Id.*

Under the second prong of the deliberate indifference analysis, the Court must consider whether the defendants "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though [they] knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. Under this standard, the plaintiff "must prove that [the defendants] acted intentionally or recklessly, and not merely negligently.' " *Id.* at 36.

In the present matter, the Court finds that Plaintiff has failed to plausibly allege a claim of deliberate indifference under the Fourteenth Amendment. Initially, the Court notes that the "medical staff" at the Cayuga County Jail were not named as defendants in this action. Rule 10(a) requires a plaintiff to "name all the parties" in the Complaint. *See* Fed. R. Civ. P. 10(a). Although the naming of pseudonymous defendants is permissible where a plaintiff requires discovery to learn the true identities of the defendants, the plaintiff subsequently must amend the complaint to reflect the discovered identities and effect service on the named parties within the 120-day time period set forth in Rule 4(m). *See Petty v. Cty. of Franklin*, 478 F.3d 341, 345–46 (6th Cir. 2007).

Here, Plaintiff has not brought suit against any pseudonymous defendants, and only makes reference to these unidentified individuals in the body of the complaint. If Plaintiff had intended to sue then-unknown members of the medical staff at the jail, he should have brought suit against "John and/or Jane Doe" defendants, who could be identified through discovery. Upon obtaining their identities, Plaintiff would then be required to amend his complaint to reflect the Doe defendants' identities. *See Simmons v. District of Columbia*, 750 F. Supp. 2d 43, 45 (D.D.C. 2011) (holding that a plaintiff "may bring an action against unknown John Doe defendants, but plaintiff must substitute named defendants for those unknown defendants after the completion of discovery") (citations omitted); *see also Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995) (holding that "[a]n action may proceed against a party whose name is unknown if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery"). Here, Plaintiff has not brought suit against unknown members of the medical staff at the Cayuga County Jail or providing any facts that would permit Defendants to assist in obtaining their identities. As such, the only potential deliberate indifference claim asserted in the complaint is a municipal liability claim against Defendant Cayuga County.

***13** In his complaint, Plaintiff has alleged that a water pipe burst outside his cell during the night, the water was turned off, and at some point during the night it pooled near his cell's

toilet. *See* Dkt. No. 5 at ¶¶ 109-13. At sometime between 6:30 a.m. and 7:00 a.m., Plaintiff claims that he got out of bed to use the toilet in his cell and slipped and fell on the wet floor. *See id.* at ¶ 110. Plaintiff alleges that, when he fell, he hit his head and neck on his bunk and his lower back on the floor, causing severe injuries, including a herniated disc in his neck and lower lumbar strain. *See id.* at ¶¶ 111-13. Plaintiff claims that, "[a]fter the injury up and until Plaintiff was released on October 4, 2018[,] Plaintiff was denied medical treatment for his injuries that he suffered inclusive of medication and treatment from a physician." *Id.* at ¶ 114.

Initially, the Court notes that nothing in the complaint indicates that Plaintiff's alleged injury was caused by a municipal custom, policy, or usage, as is required to find a plausible claim against Defendant Cayuga County. Rather, Plaintiff claims that a water pipe leaked outside his cell during the night and that a "correctional officer ... turn[ed] off the water and clean[ed] up the water spill. At that time, there was no water in Plaintiff's cell." Dkt. No. 5 at ¶ 108. When the second pipe leaked, some water entered Plaintiff's cell, which caused Plaintiff to fall. *See id.* at ¶ 109. This isolated incident, involving a bursting water pipe, is woefully insufficient to plausibly allege municipal liability for Plaintiff's alleged injury. *See* *Connick*, 131 S. Ct. at 1360; *see also* *Plair v. City of New York*, 789 F. Supp. 2d 459, 470 (S.D.N.Y. 2011) ("[I]t is well established that a single incident does not give rise to an unlawful practice by subordinate officials so permanent and well-settled as to constitute custom or usage") (internal quotation marks omitted); *Giaccio v. City of New York*, 308 Fed. Appx. 470, 472 (2d Cir. 2009) (finding that allegations of, at most, four prior incidents of misconduct "falls far short of establishing a practice that is 'so persistent or widespread' as to justify the imposition of municipal liability") (internal quotation marks omitted).

Even assuming that Plaintiff had asserted this claim against an individually named Defendant, the claim would still be dismissed. To satisfy the second prong of a deliberate indifference claim, Plaintiff must plausibly allege facts suggesting that a defendant "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though [they] knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. At best, the facts set forth in the complaint describe negligence on the part of the correctional staff, which is insufficient to support a claim of deliberate indifference. *See* *id.* at 36.

Finally, to the extent that Plaintiff is basing his claim on the alleged deprivation of medical care after his accident, Plaintiff has failed to provide any factual basis in support of his conclusory assertion that he "was denied medical treatment for his injuries that he suffered inclusive of medication and treatment from a physician." Dkt. No. 5 at ¶ 114. The complaint fails to allege that he brought his alleged injuries to the attention of the correctional or medical staff at the Cayuga County jail (or even identify any such individual).

Based on the foregoing, the Court grants Defendants' motion to dismiss as to Plaintiff's deliberate indifference claim.

## IV. CONCLUSION

After carefully the entire record in this matter, parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

***14** **ORDERS** that Defendants' motion to dismiss (Dkt. No. 9) is **GRANTED in part** and **DENIED in part**;[4] and the Court further

4 As a result of this Memorandum-Decision and Order, the only remaining claim is Plaintiff's false arrest claim against Defendant Spinelli.

**ORDERS** that Defendants City of Auburn, Butler, Cayuga County, Cayuga County District Attorney's Office, and Budelmann are **TERMINATED** as Defendants in this action; and the Court further

**ORDERS** that Defendants' letter motion a portion of the argument raised in their motion to dismiss (Dkt. No. 15) is **DENIED as moot**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 1904088

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 5:20-CV-00060** Joyner v. Spinelli | — | N.D.N.Y. | Jan. 15, 2020 | Docket |

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History**

There are no History results for this citation.

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.